The People *ex rel.* James F. Keeney

*v.*

. The City of Chicago *et al.*

*Filed at Ottawa October 29, 1894.*

1. STATUTES—*general rules of construction stated.* A thing within the intention is within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention.

2. The several provisions should be construed together, in the light of the general objects and purposes of the enactment, so as to give effect to the main intent, although thereby particular provisions are not construed according to their literal reading.

3. The intention is to be gathered from the necessity or reason of the enactment, and the meaning of words enlarged or restricted according to the true intent.

4. That which is implied is as much a part of the statute as that which is expressed.

5. When the literal enforcement of a statute would result in great inconvenience, injustice and absurdity, the courts will assume such consequences were not intended.

6. Same—*words "at once," in section 65, act of April 29, 1887.* The words "at once," in section 65 of the act of April 29, 1887, amendatory of article 9 of the Cities and Villages act, concerning special assessments, mean, *immediately upon ascertaining the amount of the surplus* directed in said section to be credited back to property owners, and not immediately upon the issuance of the vouchers mentioned in said section.

Appeal from the Circuit Court of Cook county; the Hon. Oliver H. Horton, Judge, presiding.

Messrs. Wilson, Moore & McIlvaine, for the appellant.

Mr. John S. Miller, and Mr. George A. DuPuy, for the appellees.

Mr. Justice Baker delivered the opinion of the court :

This is a petition for a writ of *mandamus*, that was filed in the circuit court of Cook county, on the relation of James F. Keeney, and against the city of Chicago and J. Samuel Sheahan, superintendent of assessments in said city. Said court overruled a demurrer to the answer of the defendants, and, the petitioner abiding by his demurrer, dismissed the petition, with judgment for costs against the petitioner.

It is alleged in the petition that the petitioner is a property owner whose property was assessed for the improvement of Ohio street, from Clark street to St. Clair street; that the ordinance authorizing the improvement provided that the assessment should be divided into installments, pursuant to the act approved April 29, 1887 ; that such assessment was duly made and levied; that the work was completed, and the contractor paid by money and vouchers, pursuant to the provisions of said act; that after the full payment of the contract for the work done, and the payment of all costs and expenses, there

remained the total sum of $873.57 over and above the cost, which sum ought to have been credited, pursuant to the statute, one-fourth upon each of the four deferred installments of said assessment ; that instead of doing so the city of Chicago and the said Sheahan, who was the superintendent of assessments in said city, and whose duty it was to compute and credit the rebates, insisted upon retaining a portion of said excess, claiming the right, notwithstanding the provisions of said statute, to retain such portion so as to enable the city to pay the vouchers issued to the contractors for such work, so that such contractors should receive payment of such vouchers in full, principal and interest, according to the terms thereof, notwithstanding the loss of the interest upon money collected upon said installments while the same remained in the hands of the county collector, and also the percentage claimed by the said collector for the collection thereof ; that the total assessment levied by the commissioners was $32,957.75, of which $29,410.18 was assessed upon private property and the remainder charged as public benefits to the city of Chicago ; that the property of petitioner was assessed $648.38, and that his proportion of the excess to be credited back, pursuant to the statute, was $17.47.

The prayer of the petitioner is, that a writ of *mandamus* may issue against the defendants, commanding them to cause the whole amount of said excess of said assessment, over and above the cost of said work, to be credited upon the said installments, so that petitioner's due proportion may be deducted from his said assessment.

The question in the case depends upon the construction to be given to the statute of this State, approved April 29, 1887, and entitled "An act to amend article 9 of an act entitled 'An act to provide for the incorporation of cities and villages, approved April 10, 1872, in force July 10, 1872,' by adding thereto the following sections." (Laws of 1887, p. 104.)    The sections which were added to

the provisions of article 9 permitted the division of any special assessment for any local improvement into five installments, where the ordinance so provided. By said amendatory act it was required that the ordinance for such improvement should fix the amount of the first installment, to be not more than twenty-five per cent of the whole; that the remaining portion should be divided into four equal annual installments, which installments should be payable annually thereafter, and collected in the same manner as other assessments were then collected; that each of the said deferred installments should bear interest at six per cent per annum, from the first day of July next succeeding the confirmation, provided that if said assessment should not be confirmed before March 1 of any year, such installments should not bear interest until July of the following year, and further, that any installment or installments which might be due against any tract, lot, block or piece of land might be paid at any time before maturity, in which case interest should be charged only to the time of payment, and that upon such payment the property for which said payment was made should be discharged from the lien to the extent of such payment. It was further provided in said act, that from the amount of the first payment, when it should be collected, there should first be paid all the costs of making said assessment, including court costs; that the remainder of said payment should then be paid to the person or persons entitled thereto, on the contract for said work; that the amount remaining due upon the contract for said improvement should then be divided into four equal payments, and vouchers issued thereon, payable in the same order and manner that said installments were payable, and further, that if, upon the payment of money and the issuance of vouchers, as provided for in said act, there should be any surplus remaining of any special assessment, over and above the payments aforesaid, it should be the duty of the proper authorities of said city to at

once cause the respective installments to be credited with their respective portions of said surplus.

The reasons that are set up in the answer of the defendants for failing to credit the whole amount of the excess or surplus are, that vouchers are issued to the contractor in such a case, payable, pursuant to the statute, out of the subsequent installments as they shall be paid in; that by the statute it is provided that such vouchers shall bear the same rate of interest per annum that the said installments bear; that said vouchers were issued in the present case, bearing interest according to the said provision of the statute; that after April 1 of each year the deferred installments accruing for that year, and out of which a series of vouchers must be paid, are paid to the county collector; that no settlement can be made with the county collector until November 1 of that year, inasmuch as the business of collecting, and selling in case of delinquency, is not complete until that time, so that the money never gets to the hands of the city treasurer until November 1, out of which the vouchers can be paid; that it often happens that owners of property assessed pay their assessments to the county collector shortly after the warrants are returned to him, and thereby interest on such installments terminates; that interest on the vouchers continues to run until the following November, so that when the money is returned to the city treasurer there is not sufficient to pay the voucher, with interest, in full; that the result must be either one of three things: First, the voucher must be paid in full, interest and principal, out of the amount collected, before crediting the rebate; or, second, the city must itself, out of other funds, make up the deficiency; or, third, the contractor must lose his interest from the time the money, or any particular amount thereof, was deposited with the county collector, notwithstanding it is impossible for the contractor to get it until the following November. The city therefore claims that the purpose of the statute was

to so provide that the entire cost of the improvement should be paid out of the assessment levied, no part to be contributed by the city from other funds, and that the contractor was not to be deprived of his interest because any property owner had exercised his option to make an early payment to the county collector. It has therefore claimed the right to retain an amount equal to six months' interest on the vouchers outstanding, payable from any installment, until it was known how much would be necessary to make up to the contractor his principal and interest in full. And the answer further shows that the defendants have only retained and deducted out of the excess to be distributed on the improvement in question, such a proportion as will be sufficient to pay the interest on the vouchers issued to the contractor for said work for a period of six months, and, in addition thereto, an amount equal to the percentage which will be retained by the collector of Cook county for his compensation for the collection of said assessment, and have tendered to said petitioner due credit for the residue of his proportion of said excess, which he has refused to receive.

It may be well to here call attention to some of the rules which should influence the court in interpreting the statute now in question. The General Assembly, in the act revising the law in relation to the construction of the statutes, lays down as the first rule to be observed, the following : "All general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried out." (2 Starr & Curtis' Ann. Stat. chap. 131, sec. 1.) A thing within the intention is regarded as within the statute though not within the letter, and a thing within the letter is not within the statute unless within the intention. (*Perry County* v. *Jefferson County,* 94 Ill. 214; *People* v. *Hoffman,* 97 id. 234; *Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 id. 26.) The several provisions of the statute should be construed together in

the light of the general objects and purposes of the enactment, and so as to give effect to the main intent, although particular provisions are thus construed not according to their literal reading. (*Hill* v. *Harding*, 93 Ill. 77; *Wabash, St. Louis and Pacific Railway Co.* v. *Binkert*, 106 id. 298.) The intention is to be gathered from the necessity or reason of the enactment, and the meaning of words enlarged or restricted according to the true intent. (*Castner* v. *Walrod*, 83 Ill. 171; *Cruse* v. *Aden*, 127 id. 231.) That which is implied is as much a part of the statute as that which is expressed. (Potter's Dwarris, 145; *United States* v. *Babbitt*, 1 Black, 55.) When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity. *Bryan* v. *Buckmaster*, Breese, 408; *People* v. *Marshall*, 1 Gilm. 672.

With these rules in mind, and keeping in view the general plan and intention of the statute, let us briefly turn to the provisions that particularly bear upon the matter here in issue.

Section 63 provides: "Payment for any improvement done or performed under the provisions of this act shall be made in the following manner: From the amount of the first payment, when it shall be collected, shall first be paid all the costs of making the said assessment, including court costs. The remainder of said payment shall then be paid to the person or persons entitled thereto on the contract for said work. The amount remaining due upon the contract for said improvement shall then be divided into four equal parts, and the authorities of any city, incorporated town or village shall issue a voucher to the person or persons entitled thereto for each part, payable in same order and manner that the installments

are payable, and said vouchers shall bear the same rate
of interest per annum that the said installments bear."
And section 65 provides : "If, upon the payment of the
money and issuance of the vouchers,  *  *  *  there shall
be any surplus remaining of said special assessment over
and above the payment aforesaid, it shall be the duty of
the proper authorities of said city, incorporated town or
village to at once cause the respective installments to be
credited with their respective proportion of said surplus ;
and in case any person or persons have, before said credit
has been entered, paid his assessment, or any part thereof,
without having received the benefit of said credit, the
proper authorities shall at once cause notice of such over-
payment to be sent by mail to the person by whom such
over-payment was made, and upon proper proofs the same
shall be repaid."

Now, it is required by statute (1 Starr & Curtis' Ann.
Stat. p. 501, chap. 24, sec. 40,) that the county collector,
in applying for judgment for delinquent special assess-
ments, shall only include such as have been certified to
his hands before April 1 of each year, so that in order
to compel payment of a particular installment of a special
assessment, the city collector must part with the war-
rant at least by the first of April in each year; but the
statutory right, under section 56 of the act of 1887 under
consideration, of every property owner to pay his assess-
ment and stop interest on it, continues, and the money
so paid goes into the hands of the county collector, and
not into the city treasury.   There is no final settlement
made with the county collector until November 1, at
which time the sale of property for taxes and special
assessment terminates.   It is substantially impossible
that the contractor for any particular work should be
able to get his money until the final settlement of the
county collector, when it is ascertained how much of the
particular assessment or installment is paid, and how
much, if any, remains unpaid.   In the meanwhile, the

money secured or witnessed by the voucher is bearing interest. It would be unjust that the contractor should lose his interest, and, to that extent, the benefit of his contract; and it would be unjust that it should be paid out of the general funds of the city, and be a burden upon all the tax-payers of the municipality. It would seem to be in consonance with the legal principle upon which special assessments are based, and also in consonance with the general plan and intention of the statute under examination, that it should be paid out of the funds realized from the special assessment. The statute says : "The remainder of said payment shall then be paid to the person or persons entitled thereto on the contract for said work." Is not the contractor as much entitled to the interest that his contract calls for, and that his voucher vouches for, as he is entitled to the principal sum that the contract and voucher demand? Is he not entitled to receive the interest that the statute says his vouchers shall bear? It seems to us so. "If, upon the payment of the money,    *    *    *    there shall be any surplus remaining of said special assessment over and above the payment,    *    *    *    the respective installments" are "to be credited with their respective proportion of said surplus." But if all the money collected by special assessment is required to be used in paying the principal and interest of the vouchers, how can there be any surplus? Would not the surplus be just what is left after paying both principal debt and interest, and no more?

It is suggested that the statute says : "If, upon the payment of the money and issuance of the vouchers,    *    *    *    there shall be any surplus remaining of said special assessment over and above the payment aforesaid, it shall be the duty of the proper authorities    *    *    *    to *at once* cause the respective installments to be credited with their respective proportions of said surplus." The argument of counsel is, that the statute is specific, that the whole surplus is to be ascertained as soon as the con-

tractor has been settled with, in money and vouchers, and that it is then the duty of the authorities of the city to "*at once*" credit back the rebate. But, immediately following the language last above quoted, and in the same sentence, provision is made for the case of persons who pay their assessments or subsequent installments "before said credit has been entered," and "without having received the benefit of said credit" derived from a surplus left from a prior installment. This would seem to indicate that it was within the legislative contemplation that there would be some delay in crediting the surplus; and if we are right in what we have already said, then there would necessarily be some delay, until the first of the following November, before it could be ascertained what the surplus would be. Why may not the expression "at once," be held to have reference to a point of time immediately upon such ascertainment? It seems to us that in favor of the main intent of the statute, and in order to adopt a construction which will promote the ends of justice, it should be so held.

There is another matter involved in the case, and the result that would be worked in respect to that, upon the theory of appellant, throws additional light upon the question of the construction that should be placed upon the statute. The county collector is paid for his services in collecting taxes and special assessments by a percentage of the collections. In any event, the amount of such percentage never gets into the city treasury. So if the correct interpretation be, that the exact amount of the surplus is to be definitely ascertained and irrevocably determined as soon as the contractor has been settled with, under section 63 of the statute, in money and vouchers, and that it is at the same point of time the duty of the municipal authorities to "at once" credit back to the property owners the whole apparent rebate, then there will inevitably, in every instance of a special assessment payable in installments, be a deficiency, not only of interest

but of principal. It cannot be presumed, if it can reasonably, or even possibly, be avoided, that the legislature intended a result not only unjust, but absurd.

The statute should be so construed as to require repayment to a property owner only of his proportion of such surplus or excess as shall remain after payment of all costs of making the assessment, including court costs, after payment of all costs of collecting the assessment, and after payment to the contractor of his compensation in full, including the interest demanded by his vouchers up to the time the money reaches the city treasury and can be paid to him. That such is the law we think is manifest not only from the reason of the thing when applied to the statute, but also from the decision of this court rendered in the case of *Edwards* v. *People*, 88 Ill. 340. It was there expressly held that it was proper for the Auditor of Public Accounts, in computing and certifying to the county clerks the rate of·per cent which will produce the net amount of State taxes authorized to be levied, to make such rate high enough to include also the amount which will inevitably be lost in the collection, and it was there said : "Commissions have to be paid from the amount collected, to townships ; allowances have to be made for such taxes as cannot be collected by the different officers ; lands may be forfeited to the State for the want of bidders, and in various other ways losses may occur which will necessarily detract from the amount of the levy. If, therefore, the Governor, Auditor and Treasurer, in the determination of the rate per cent, should be limited to the exact amount which would raise the amount authorized by the legislature, making no allowances for commissions and losses in the collection of the revenue, the result would be a constant embarrassment of the State in meeting its liabilities and current expenses, on account of a deficit in the amount raised each year. We cannot give the law which places this responsible duty in the hands of these high officers of the State such a

narrow construction. When they enter upon the discharge of the duty imposed, they have before them the assessed value of all the property in the State. The law fixes the amount of revenue to be raised upon that assessment. In ascertaining the rate per cent necessary to raise the required amount, it is proper for them to take into consideration the past history of the State in regard to the amount of losses and deductions which will probably occur in the collection of the revenue, and, in the exercise of their judgment upon this basis, fix upon a rate per cent which will produce the *net* amount required to be raised."

The order and judgment are affirmed.

*Judgment affirmed.*