[No. 1343. February 4, 1911.]

THE TERRITORY OF NEW MEXICO, Upon the Relation of the City of Albuquerque, Appellant, v. O. A. MATSON, City Treasurer of the City of Albuquerque, Appellee.

## SYLLABUS (BY THE COURT).

1. A city is the party "beneficially interested" in a suit to compel its treasurer to deposit the money in his hands belonging to it in a bank designated by an ordinance of the city, from which it would receive interest on the money so deposited.

2. A city ordinance requiring the treasurer of a city to deposit all moneys in his hands belonging to the city in such bank, or banks, as shall qualify as provided in the ordinance, but not attempting to restrict in any way the paying out by him, under the provisions of law, of such moneys by his own checks, would not operate to deprive him of the "custody" of such moneys, within the meaning of Section 2424, C. L. 1897.

3. The use, as a part of the repealing clause of a statute, of the words "all acts and parts of acts in conflict herewith" repeals nothing which could not be repealed by implication without those words.

4. Section 3, of Chapter 122, of the Session Laws of 1909, providing that municipal and county treasurers are required to designate depositories in which the funds coming into their hands shall be kept, is manifestly and totally repugnant to the provisions of Sec. 2424 of the Compiled Laws of 1897, providing that city councils may designate a place of deposit for city funds, and may require the city treasurer to keep all moneys in his hands belonging to the corporation in such place of deposit, and operates to repeal Sec. 2424.

Appeal from the District Court for Bernalillo County, before MERRITT C. MECHEM, Associate Justice. Affirmed.

H. J. COLLINS and MARRON & WOOD for Appellant.

C. L. 1897 conferred ample authority on the city council to designate depositories of city funds and to require and compel the treasurer to place all city moneys in his hands in the depositories so designated. C. L., secs. 2456, 2403, 2462, 2467, 2420, 2424.

Where an act or word is susceptible of two meanings the court will give it such construction as will render the law effective and not nugatory. 26 Enc. 649; Mack v. Prince, 40 W. Va. 326; Suth. Stat. Const., sec. 348.

Custody. Roland v. Commonwealth, 82 Pa. 306; 22 Am. Rep. 759; Klemmer v. Mt. Penn Gravity R. Co., 30 Atl. 274, 163 Pa. 521; Com. v. Valsalka, 181 Pa. 17; People v. Githler, 78 Ill. Ap. 193; State v. Midland State Bank, 66 Am. St. Rep. 484; Meyers v. Board of Education of Clay Center, 37 Am. St. Rep. 263.

Section 2424, C. L. 1897, was not repealed by Chapter 122, Laws of 1909. Sutherland Stat. Cons., secs. 256, 267, 34; Redrock v. Henry, 106 U. S. 596; Wood v. U. S., 16 Peters 342; U. S. v. Tinon, 78 U. S. 153; Matter of Tiffany, 179 N. Y. 455; Baca v. Bernalillo County, 10 N. M. 445; 26 A. & E. Enc., 2 ed. 721, 725, 727, 646, 647, 602, 603, 604; in re Brooklyn, 185 N. Y. 171; Smith v. McCool, 66 U. S. 459; Brown v. McCormick, 28 Mich. 215; McAfee v. So. Ry. Co., 36 Miss. 669; State ex rel etc. v. Owen, 59 N. W. 886; Rhodes v. Weldie, 46 Ohio St. 242; Pitte v. Shipley, 46 Cal. 161; Laws 1884, chap. 38; C. L. 84, secs. 1669, 1707; Laws 1891, chap. 32; Laws 1901, chap. 13; People v. Gibler, 78 Ill. App. 193.

M. E. HICKEY, MANN & VENABLE, A. B. McMILLEN for Appellee.

A mandamus can issue only on the information of the party beneficially interested. 28 Cyc. 258; Barnes v. District of Columbia, 91 U. S. 544; Commissioners v.

Lucas, 93 U. S. 114; Ottawa v. Carey, 108 U. S. 110; Dillon on Municipal Corporations, secs. 89-91; C. L. 1897, secs. 2762, 2456, 2403, 2462, 2467, 2420, 2424, 2419; Maloy v. Commissioners, 10 N. M. 638; State v. Whipple, 83 N. W. 921.

The city has no power to pass such an ordinance. Dillon on Municipal Corporations.

Custody.    Roland v. Commonwealth, 82 Pa. 306; Laws 1909, ch. 122; C. L. 1897, sec. 2424.

An ordinance which is repugnant to a statute is void. Robinson v. Mayor of Franklin, 1 Hum. 156, 34 Am. Dec. 652.

Where two statutes on the same subject are repugnant in any of their provisions, the latter operates to the extent of the repugnancy, as a repeal of the former. Mersereau v. Mersereau, 51 N. J. Eq., 6 Dick. 382, 26 Atl. 682; Excelsior Petroleum Co. v. Embury, 67 Barb. 261; Territory v. Digneo, 15 N. M. 157; Sandoval v. County Commissioners, 13 N. M. 537; Baca v. Bernalillo, 10 N. M. 438; Geck v. Shepherd, 1 N. M. 346.

## STATEMENT OF THE CASE.

The relator, the City of Albuquerque, appeals from a judgment of the Second District Court of Bernalillo County, dismissing the relator's petition for an alternative writ of mandamus, and the alternative writ issued thereon, on the relator's motion for judgment on the pleadings, the facts being correctly set forth therein. Briefly stated, the following are the facts alleged in the petition: On April 13, 1910, the city council of the city of Albuquerque, assuming to act under the authority conferred upon it by the general laws of the Territory, relating to municipal corporations, duly enacted ordinance No. 462 of said city, establishing and designating as depositories for public moneys belonging to the city, in the hands of the city treasurer, three banks in the city of Albuquerque, upon their compliance with the conditions specified, within fifteen days from its passage, and provided, that if any of said banks should fail to comply within the time limit, that the designation of such bank failing should stand

revoked, leaving the bank, or banks, specified which should comply with the ordinance, as the sole lawful depositories. The conditions contained in this ordinance were, in substance, that the banks should, within five days, give notice to the city treasurer of their intention to comply, and give bond in a sum specified by the treasurer, and to be approved by the council, for compliance with the ordinance and accounting for the money, and also, that they would pay to the city interest at three per cent, on daily balances on all city money held by them subject to check, and at four per cent on all city moneys so held, not subject to check. The ordinance further provided, that the balances in all three banks should be kept as nearly equal as convenient, and required the treasurer to deposit and keep all city funds in his hands in the banks qualifying under this ordinance. Only one of the banks specified, namely, the State National Bank, qualified under the ordinance. It gave notice to the treasurer of its intention to qualify, and the treasurer, refusing to fix the amount of the bond to be given by he bank, it tendered to the city council a bond in the penalty of three hundred and fifty thousand dollars, and the same was received and approved by the city council. A resolution was thereupon passed by the city council reciting that the State National Bank was the only bank qualifying, and that the amount of the funds it was entitled to receive would be in excess of one half of the penalty of the bond so approved, and, therefore, requiring the bank to give an additional bond to cover the excess, or, at its option, a new bond in the penalty of five hundred thousand dollars. The new bond was accordingly given, and approved by the council, which thereupon declared the State National Bank the sole lawful depository of public moneys belonging to the city under the ordinance. Due demand was made on the city treasurer by the city for the deposit of said funds, and, upon his failure and refusal to do so, an alternative writ of mandamus was sued out by the city against the treasurer to compel such deposit. The treasurer answered, not denying the allegations of the writ, but contending, in substance, first: that the city was not the proper party to

apply for the writ; second: that the council was without power to designate a depository; and, third: that the treasurer had a lawful right to select his depository and had designated the First National Bank of Albuquerque as such depository. The city thereupon moved for judgment in its favor on the pleadings, which the court denied, and instead, gave judgment for defendant, dismissed the writ, and allowed the relator an appeal therefrom. The relator, upon the appeal, has assigned the following errors: 1. Because the court erred in overruling the motion of the relator for judgment upon the pleadings. 2. Because the court erred in awarding final judgment, dismissing the proceedings upon the facts alleged in the petition and writ, and admitted by the answer. 3. Because the court erred in the judgment granted by it herein. The condition of the respondent below was based upon three grounds. First: That the city of Albuquerque is not the party beneficially interested in the proceedings. Second: That Section 2424 of the Compiled Laws, 1897, is the only section purporting to grant the right to the city council to designate depositories, and this section is contradictory and void. And, Third: That if the council ever were empowered by law to designate a depository of the city moneys that law was superseded and repealed by chapter 122, of the Laws of 1909, which requires the treasurer himself to designate such depository.

## OPINION OF THE COURT.

WRIGHT, J.—The claims of the respondent that the relator, the city of Albuquerque, is not the party beneficially interested within the meaning of Section 2762, C. L. 1897, are negatived by the facts stated in the record.

It there appears that the city was the owner of a considerable sum of money, more than one hundred and seventy-five thousand dollars, and presumably about two hundred and fifty thousand dollars, in the hands of its treasurer, and that if it should be deposited in the bank designated by ordinance, the city would receive interest for it at the rate of three or four per cent. That certainly

creates a beneficial interest in the city to have the deposit made.

2. The question whether under Section 2424, C. L. 1897, a city had the right to designate a depository of its money in the hands of its treasurer, turns on the meaning of the word "custody," as used in the statute. The appellee claims that the provision: "He may be required to keep all moneys in his hands belonging to the corporation in such place of deposit as may be designated by ordinance," is contradicted and rendered nugatory by the words immediately following: "Provided, however, no such ordinance shall be passed by which the custody of such money shall be taken from the treasurer." It should be borne in mind that the money is all the time the property of the city, and not of the treasurer, that his duty is to receive it for the city and with it pay claims against the city which have been duly approved. Everything else is, or should be, subsidiary to this main object. In that connection, the word "custody" must mean immediate charge and control under the law, and not the final absolute control of ownership. Suppose a person to be carrying on a business through a manager, and that he directs him to deposit all the money he receives in a certain bank in his own name as manager, and subject only to his checks as manager—could it be said with any show of reason that the money is not in his custody because he did not select the bank of deposit? And is a prisoner any less in the custody of the jailer because he holds him in a jail provided by the county and designated by law as the place of confinement for such prisoner? If, by the ordinance in question, the city had, for instance, required the treasurer to deposit in the joint names of himself and some other officer of the city, and that payments from the desposit should be made only by checks signed by both such depositors, that, obviously, would have been calculated to deprive him of the custody of the money. But the mere designation of the bank in which he shall deposit, in his own name, and subject only to his own checks, as treasurer, without in the least restricting his right to pay out the money according to law, is not depriving him of the custody of

the money. Roland v. Commonwealth, 82 Pa. 306, 319, 22 Am. Rep. 758; Klemmer v. Mt. Penn Gravity R. Co., 163 Pa. 521, 30 Atl. 274; Commonwealth v. Valsalka, 181 Pa. 17, 37 Atl. 405, 409; People v. Gibler, 78 Ill. App. 193. We conclude, then, that under the law, as it was in the compilation of 1897, cities did have the right to designate, by ordinance, the banks in which their treasurers should deposit the city funds received by them.

3. The city council having the right under Section 2424 of the Compiled Laws to designate by ordinance the banks in which their treasurers should deposit the city funds received by them, we must now determine whether they have since been deprived of that right by later legislation. If this right has been taken away from the city council, it is by Section 3, Chapter 122, of the Session Laws of 1909. We quote the two acts in full: "Sec. 2424. He may be required to keep all moneys in his hands belonging to the corporation in such place of deposit as may be designated by ordinance: Provided, however, no such ordinance shall be passed, by which the custody of such money shall be taken from the treasury. The treasurer shall keep all moneys belonging to the corporation in his hands, separate and distinct from his own moneys, and he is hereby expressly prohibited from using, either directly or indirectly, the corporation money or warrants in his custody and keeping, for his own use or benefit, or that of any other person or persons whomsoever. x x." "Chapter 122, An Act to provide for the furnishing of proper bonds by territorial, county and municipal officers, and for other purposes. Approved March 18, 1909." "Sec. 3. x x x All county and municipal treasurers are hereby required to designate one or more banks authorized to do business under the laws of the Territory of New Mexico, or under the laws of the United States, as a depository, or depositories, for the deposit and safe keeping of all funds coming into their hands as such treasurer. And upon the deposit by the treasurer in such depository of funds coming into their hands as such treasurers, they shall be absolved from any liability upon their official bonds for any loss of such moneys arising out of the failure of such de-

pository to repay said funds: *Provided,* That no moneys shall be deposited with any such depository until it shall have executed and delivered a good and sufficient bond in an amount equal to the amount of the bond required to be given by such treasurers under this act, equal to the proportionate amount of such moneys which said depository is to receive under its said designation, which said bond shall run to the Territory of New Mexico, and shall be approved as to the form and sufficiency by the judge of the district court of the district within which said treasurer resides and conditioned that such depository will faithfully perform all of its duties as such depository and will, upon demand of such treasurer, pay over all moneys deposited with it. The name or names of the depositories designated by the county treasurers shall be by said treasurers immediately certified to the traveling auditor of the Territory." While it is undoubtedly true that the title of Chapter 122 and the other provisions of the act indicate that the primary object of the act was to relieve municipal and county treasurers from the exactions of the trust and surety companies, we have no constitutional prohibition against including more than one subject in the same legislative act. Chapter 122, Session Laws of 1909, does not specifically repeal Section 2424, nor does the use, in the repealing clause, of the words, "all acts and parts of acts in conflict herewith," add anything to the repealing effect of the later legislation. Can the two laws: Section 2424, of the Compiled Laws, and Section 3, of Chapter 122, of the Session Laws of 1909, be read together so that both laws may stand and be given their full effect? Repeals by implication are not favored, and it is the duty of the courts so to construe the acts, if possible, that both shall be operative. Lewis Sutherland on Stat. Cons., Sec. 247. But where two statutes on the same subject are manifestly and totally repugnant and contradictory in their provisions, the latter statute, to the extent of the repugnancy and contradiction operates as a repeal of the former. McCool v. Smith, 1 Black 459; Territory v. Digneo, 15 N. M. 157; Sandoval v. County Commrs., 13 N. M. 543; Baca

v. Bernalillo County, 10 N. M. 438. Under the provisions
of Section 2424, cited supra, the city council, by ordinance,
*may* designate a depository or depositories, and, in event
they do so designate a depository or depositories, they *may*
require the treasurer to keep all the moneys in his hands
belonging to the corporation in such place or places of
deposit. By the provisions of Section 3, Chapter 122, of
the Laws of 1909, all county and municipal treasurers
"*are hereby* required to designate one or more banks, etc.
x x x x x Provided, that no moneys shall be deposited with
any such depository until it shall have executed and de-
livered a good and sufficient bond," etc. We think that a
mere reading of the two provisions clearly shows the legis-
lative intent to place the designation of his depository
wholly within the control of the municipal or county treas-
urer, as the case may be. Under Section 2424, cited supra,
the action of the city council is optional. Under Section
3, Chapter 122, Laws of 1909, the action of the treasurer
is made mandatory and he has no option whatsoever.
While we are of the opinion that the language of the
later act is so plain in its requirement that the treasurer
is required to designate the depository for county and
municipal funds as to leave no room for speculation as
to the legislative intent, the fact that Section 2424 makes
no provision whatever for the giving of a depository bond,
thereby leaving the matter wholly within the control of
the city council, while Section 3, of Chapter 122, Session
Laws of 1909, specifically requires that a bond be given,
and that same shall be approved as to form and suffi-
ciency by the Judge of the District Court, indicates still
more forcibly the legislative intent to place the power to
designate county and municipal depositories in the hands
of the county or municipal treasurer. While we must
admit that the later act places a power in the hands of the
treasurer that may be subject to grave abuses, and that
Section 2424 is more in harmony with the entire scheme
of municipal government, such considerations can have
no weight with the courts where the terms of the later
act are so *manifestly and totally repugnant* to the earlier
act that by no reasonable rule of construction could the

two acts be read together so as to give effect to both laws. Counsel for appellant urges that the omission of the word, "city," in the third section of Chapter 122, of the Session Laws of 1909, when in the first section of the act the words, "county, city or municipality" occur twice, indicates a distinction in the legislative mind between the words, "city" and "municipality." While it is true, that there is a presumption that the meaning of a word repeatedly used in a statute is the same throughout, (Pitte v. Shipley, 46 Cal. 161), we think that the title of the act itself, wherein the words, "territorial, county and municipal officers" are used, taken together with our statutory definition of the words, "municipal corporations," Sec. 2452, C. L. 1897, clearly precludes any such distinction in the third section of Chapter 122, of the Laws of 1909. We must, therefore, hold that Chapter 122, of the Session Laws of 1909, operates to repeal Sec. 2424 of the Compiled Laws of 1897. The judgment of the lower court is affirmed.

### DISSENTING OPINION.

ABBOTT, J. (Dissenting)—I am unable to concur in the opinion of the court that by Chapter 122, of the Laws of 1909, it was the legislative intention to deprive cities of the right, which theretofore they had, to require their treasurers to keep the city funds in banks designated by the cities themselves. A casual reading of the statute would, it is true, naturally give the impression that such was the meaning of its makers. It is, however, a cardinal principle of statutory construction that after a statutory system, or policy, has been long established, and is well defined, it will not be lightly presumed to be departed from or abandoned. Lewis' Sutherland on Stat. Const., Sec. 581, and cases cited. In applying that principle, the Supreme Court of the United States, in Parsons v. The United States, 167 U. S. 328, went so far as to hold that Section 769, Revised Statutes U. S., "District attorneys shall be appointed for a term of four years, and their commission shall cease and expire at the expiration of four years from their respective dates," did not mean that dist-

rict attorneys were entitled to hold office four years, but that they should not hold more than four years, because to hold otherwise would be to run counter to the general purpose' of Congress, gathered from other of its acts, that it would not undertake to interfere with the President's power to remove from office by creating a fixed term for an officer. It cannot be doubted that if the meaning of the statute in question is that claimed for it by appellee, it is in conflict with what has stood for many years as the policy of the Territory toward cities, and the principles on which that policy was based. The statute law of the Territory was clearly designed to give to cities practically complete self-government and control of the money they were authorized to raise by taxation. Section 2402, C. L. 1897, alone contains more than one hundred separate grants of power to cities, and other sections of the same chapter many more.   Some of the more significant are: "Section 2424: The corporate authority of cities organized under this act shall be vested in a mayor and a board of aldermen to be denominated the city council, together with such officers as are in this act mentioned, or may be created upon its authority." "Section 2403: Municipal corporations shall have power to make and publish, from time to time, ordinances not inconsistent with the laws of the Territory, for carrying into effect or discharging the powers and duties conferred by this act, and such as shall seem necessary and proper to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof." "Section 2462: The city council shall possess all the powers granted in this act, and (all) other corporate powers of the city, not herein, or by some ordinance of the city council conferred on some officer of the city; they shall have the management and control of the finances and all the property, real and personal, belonging to the corporation x x x." "Section 2467: The qualified electors of each city shall also elect, by a plurality of votes, a city treasurer, who shall hold his office for one year, and shall have such powers and perform such duties as are prescribed in this act, or by ordinance of the city council not in-

consistent herewith." "Section 2420: The treasurer shall receive all moneys belonging to the corporation, and shall keep his books and accounts in such manner as may be prescribed by ordinance x x x x x." "Section 2424: He may be required to keep all moneys in his hands belonging to the corporation in such place of deposit as may be designated by ordinance: Provided, however, no such ordinance shall be passed, by which the custody of such money shall be taken from the treasurer. The treasurer shall keep all moneys belonging to the corporation in his hands, separate and distinct from his own moneys, and he is hereby expressly prohibited from using, either directly or indirectly, the corporation money or warrants in his custody and keeping, for his own use or benefit, or that of any other person or persons whomsoever x x x x." "Section 2419: The treasurer shall give a bond to the city or town in its corporate name, with good and sufficient sureties, to be approved by vote of the council or board of trustees, in such sum as the council, or trustees, may require, and conditioned for the faithful performance of his duties as treasurer of such city or town so long as he shall serve as such treasurer, and that when he shall vacate such office, he will turn over and deliver to his successor, all moneys, books, papers, property, or things belonging to such city or town and remaining in his charge as such treasurer." With all the sections above quoted, the statute under consideration is at war, and that in a way clearly to promote injustice and dishonesty. It purports to direct a treasurer to designate a bank, organized under the laws of the United States or of New Mexico, as the depository of the city funds in his hands, and required of such depository a bond in half the amount of the collections of the preceding year, and then follows the extraordinary provision that the treasurer on depositing money with said bank, *of his own selection,* shall be exempt from liability if the depository fails to account for the money. There would be reason in exempting a treasurer from liability for money deposited in a bank selected by the city in which he is required by ordinance to deposit, but none, that we can perceive, for so exempting him when the selection is made by

Territory v. Matson, 16 N. M. 135.

himself. What might not unnaturally happen is easily per-
ceived. There may be a national bank with a capital of only
twenty-five thousand dollars. The amount of the bond re-
quired of the depository designated by the treasurer, in the
present instance, based on the collections of the preceding
year, as we understood from statements of counsel in argu-
ment which were not questioned, would be only fifty thou-
sand dollars. Yet it appears that the treasurer of Albu-
querque had in his hands, belonging to the city, more than
one hundred and seventy-five thousand dollars, probably
about two hundred and fifty thousand dollars, made up, in
part, presumably, of some special fund, such as a city might
have on hand for the construction of public works, and
which probably would not fall under the head of "collec-
tions," for fixing the amount of the treasurer's bond. From
a pecuniary standpoint, it might be profitable for a bank
with a small capital to forfeit its bond, go out of business,
and divide with the depositing treasurer the profits of the
enterprise. Further, in the same line, it appears that under
this statute it would be impossible for a city to obtain in-
terest for the use of its money so deposited by its treasurer,
since the money would be put wholly beyond its control, ex-
cept for the payment of claims against it. The law prohibits
a treasurer from using the money of the city in his hands
for his own use or benefit, or that of any other person.
Sec. 2424, supra, but it would be difficult to devise a sys-
tem better calculated than the one it is urged this statute
contains, to facilitate such a use without detection. It is
suggested in the brief for the appellee, although it does
not so appear in the record, that the depository designated
by the defendant, the treasurer of Albuquerque, has given
a bond in the sum of two hundred and fifty thousand dol-
lars, and has paid the city three per cent for the use of
the money deposited by the treasurer with it. But it was
not required so to do by the statute. The fact, assuming it
to be one, since it is not questioned, that the defendant
treasurer and the depository designated by him are of
unimpeachable financial standing and integrity, and would
not, in any way, take advantage of the facilities for wrong-
ing the city, which the statute affords, that does not, in the

least, tend to prove that other treasurers and depositories would be as forbearing. Rather is this voluntary action of the depository bank, in going beyond the apparent requirements of the law, an admission of the inadequacy of the law properly to protect the interests of the city, and of the injustice of its provisions, taken literally, toward the city. But, it is said, "Statutes will be construed in the most beneficial way which their language will permit, to prevent absurdity, hardship or injustice, to favor public convenience, and to oppose all prejudice to public interests." Lewis' Suth. Stat. Cons., 2 ed., sec. 490. See, also, Lau Ow Bew v. United States, 144 U. S. 47; Tsoi Sim v. United States, 116 Fed. 920. "When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd, and which the legislature could never have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity." Lewis' Suth. Stat. Cons., Sec. 489; People v. Chicago, 152 Ill. 546, 552, 38 N. E. 744. "Consideration of convenience, justice and reasonableness, when they can be invoked against the implication of repeal, are always very potent." People etc. v. Raymond etc., 186 Ill. 407, 57 N. E. 1066. To the considerations which we have named, should be joined the familiar one that repeals by implication are not favored. "Repeals by implication are not favored." "It is the duty of the courts to so construe the acts, if possible, that both shall be operative." Lewis Suth. Stat. Cons., Sec. 247. And the use of a general repealing clause of "all inconsistent acts and parts of acts," adds nothing to the repealing effect of repugnancy itself. Lewis' Stat. Cons., Sec. 256. Plainly, then, we should next consider whether Chapter 122, of the Laws of 1909, is necessarily so repugnant to the provisions of Sections 2424 and 2462, C. L. 1897, as that the two cannot stand together, since otherwise both should be held effective. "There must be such a manifest and total repugnance that the two enactments cannot stand." McCool v. Smith, 66 U. S. 459. The fundamental rule in construing statutes is to ascertain

and give effect to the intention of the legislature. 36 Cyc. 1106. Closely allied is the rule that the spirit or reason of the law will prevail over its letter. Especially is this rule applicable when the literal meaning is absurd, or, if given effect, would work injustice, or where the provision was inserted through inadvertance. 36 Cyc. 1108, 1109; Pond v. Maddox, 38 Cal. 572. Every statute must be construed with reference to the object intended to be accomplished by it. Our first inquiry, in order to ascertain the meaning of the legislature should be for the object of the statute. "It is indispensable to a correct understanding of a statute, to inquire first what is the subject of it, what object is intended to be accomplished by it x x x when the intention can be collected from the statute. Words may be modified, altered, or supplied, so as to obviate any repugnancy or inconsistency with such intention." Lewis Suth. Stat. Cons., Sec. 347. "The intention of an act will prevail over the literal sense of its terms." Lewis Suth. Stat. Cons., Sec. 348.

Fortunately, the object, or at least, the main purpose, of the statute in question is not in doubt. By Chapter 106, Session Laws of 1905, the treasurer of the Territory and county, and municipal treasurers, were required to give bonds with surety companies as sureties, whereas, before that time, personal sureties, who, as a matter of common knowledge, generally charged nothing for the favor, were accepted. The change imposed on the treasurers affected the burden of paying the surety companies, in many cases, considerable sums. The statute under consideration was clearly intended primarily to relieve treasurers from that burden. Obviously, it was drawn without the degree of care necessary to commend it to us as a clear expression of legislative intent. The repealing clause declares the repeal of Chapter 106, supra, and all acts and parts of acts in conflict "therewith," instead of "herewith," which was undoubtedly the word meant. It seems clear, too, that a provision requiring the depositories designated by municipal treasurers to give bonds to the Territory of New Mexico, was included by inadvertance in connection with the requirements that depositories designated by county treas-

urers should pursue that course. The requirement that the municipal treasurers themselves should give bonds to their respective municipalities was not changed, and no reason is perceived why the requirement for depositories should have been intentionally made different. Of more importance is the fact that it is left uncertain whether it was meant to include city treasurers under the phrase "municipal treasurers," in the third section of the act. Counsel for the appellant makes what is, at least, a plausible argument against that construction, mainly from the fact that in the first section of the act the words, "county, city or municipality," occur twice, indicating a distinction in the legislative mind between "city" and "municipality." While there, is no presumption that the meaning of a word repeatedly used in a statute is the same throughout, (Rhodes v. Weldie, 16 Ohio St. 242; Pitts v. Shipley, 46 Cal. 161), I think that, in view of the statute definition of "municipal corporations," as including "cities and incorporated towns," Sec. 2452, C. L. 1897, and of the language of Chapter 106, Laws of 1905, in which city treasurers are distinctly named, and for which statute that of 1909 was clearly designed to be substituted, it would be giving too narrow a construction to hold that the statute was not meant to apply to city treasurers. It is proper, however, to allow these manifest defects of expression in the statute their due weight, in construing other portions of it to which doubt is attached. If there was clearly failure to express the meaning intended on some points, there is some degree of probability that there was a like failure as to other points.

It appears, then, that the construction contended for by the appellee would run counter to each of these several rules of construction referred to, and "courts will give cumulative effect" to such antagonism. State v. Lowry, Ind., 9 A. & E. Ann. Case 350. Lewis v. State, Id.

It remains then to determine whether the statute in question can properly be given a meaning not repugnant to that of the law requiring city treasurers to deposit the money of the city as directed by ordinance. Certainly, what

appears to be the chief object of the later statute, the exemption from the burden of paying for surety company bonds, would be accomplished in that way as fully as if the treasurers themselves selected the depositories, and if it be assumed that another object was to enable treasurers to escape liability for the default of the bank, that, too, would be effectuated by their designating as depositories the banks specified by the cities. Replying to the argument to that effect in the appellant's brief, the brief for the appellees asks, "why not the city council select the depository designated by the treasurer?" If the rights of the owner of property are not to be considered as paramount to those of the agent, or servant, to whom the property is entrusted for a definite purpose, nothing can be said in reply to that suggestion. If, however, the owner's rights are paramount and should be protected, then nothing need be said by way of reply. There remains no other object to be accomplished by the statute, unless it be, as already suggested, to enable treasurers to avoid the prohibition against using the public funds in their hands for their own benefit, and such an object is not to be attributed to the legislature. A construction "which enables one to profit by his own wrong" is not favored. Beal's Cardinal Principles of Legal Interpretation, pp. 345-9, citing Gowan v. Wright, (1886) 18 Q. B. D. 201. Said Lord Coleridge, C. J., in The Queen v. Clarence, 22 Q. B. D., 23 at p. 65 (1888), cited in Beal's Cardinal Principles, supra, pp. 326, 327: "If the apparent logical construction of its language leads to results which it is impossible to believe that those who framed or those who passed the statute contemplated, and from which one's own judgment recoils, there is, in my opinion, good reason for believing that the construction which leads to such results cannot be the true construction of the statute."