[Civil No. 1416.   Filed April 23, 1915.]

[147 Pac. 914.]

JOHN L. THOMAS, Appellant, v. STATE at the Relation and to the Use of E. A. ROGERS, Treasurer and Ex-officio Tax Collector in and for the County of Yavapai, State of Arizona.

TAXATION—TAX SALES—EFFECT.—Laws of 1903, No. 92, enacted for the collection of all back taxes which had become delinquent for a period of five years before it took effect, and for the collection of delinquent taxes for each subsequent year, provides for a back tax book for the five years next preceding 1903 in which is to be entered a correct list of all lands on which taxes are due, together with the amounts uncollected. It also provides that all back taxes of whatever kind shall be extended in the back tax book, and that the collectors of the respective counties shall proceed to collect taxes contained in the back tax book, and any person interested, or the owners of land contained in the back tax book, may before the 31st of December, 1903, redeem such property by paying the amount of the original taxes with interest, provided that, if suit shall have been commenced, costs, in addition to the taxes and interest, must be paid. The act further provides that if on the 1st of January, 1904, any real estate on which back taxes are extended in the book shall remain unredeemed, it shall be the duty of the tax collector to enforce payment by suit in the name of the state, and for a back tax book for each year subsequent to 1903. *Held* that, as statutes should be construed to give effect to the intent of the legislature, and avoid inconvenience, a sale of land for taxes delinquent for the year 1911,

though held in 1912, after taxes for that year had become due, but before they had become delinquent, does not bar the state from collecting by subsequent suit and sale taxes for 1912, particularly where the purchaser knew that such taxes were due and unpaid; for, as taxes become due early in the year, though they do not become delinquent until the last of the year, the state, if precluded from selling property for past taxes under pain of losing taxes for the year of the sale, would be unable to collect revenue.

[As to power of legislature to make tax deeds conclusive, see note in 4 **Am. St. Rep.** 187.]

APPEAL from a judgment of the Superior Court of the County of Yavapai. Frank O. Smith, Judge. Affirmed.

Mr. Daniel E. Parks and Messrs. Norris & Mitchell, for Appellant.

Mr. John J. Hawkins, for Appellees.

FRANKLIN, J.—Taxes on the property of the Weaver Mountain Mining Company, a corporation, for the year 1912, not being paid and the same becoming delinquent, the state of Arizona at the relation of E. A. Rogers, treasurer and ex-officio tax collector of Yavapai county, where said property is situate, obtained a judgment foreclosing the lien for said taxes, and was proceeding to make a sale of the property in satisfaction thereof when this action was commenced seeking to enjoin such sale. The appellant, Thomas, who was the plaintiff below, and who has a deed to the property in question by virtue of a judgment of foreclosure and sale for the taxes of 1911, claims that he is no less exempt for the taxes of 1911 than for the taxes of 1912, because the latter were delinquent and might have been included in the offer of sale when the sale for taxes of 1911 was made. The ground is that, the state (territory) having sold the property to satisfy its lien for the taxes of 1911, when such sale was made, the taxes of 1912 were then an existing lien on the property; that the state, by making a sale of the property for the taxes of 1911, when, at the time of such sale, the taxes of 1912 were an existing lien or encumbrance on the property, thereby sold it freed of the taxes for 1912.

On the showing made, the court granted a temporary injunction, but on the final hearing found the issue in favor of

the state, dismissed the complaint, and dissolved the injunction. The appeal is from the judgment and an order denying a motion for a new trial.

The only question for decision is: Did the state (territory), by making the sale for the taxes of 1911, sell the property free from the lien or encumbrance of the taxes for 1912? We are of the opinion that it did not. In the year 1903 there was much property in the territory of Arizona upon which the taxes for many previous years were unpaid and delinquent. This circumstance gave birth to Act No. 92, Laws of 1903, being an act to amend chapter 7 of title 62 of the Revised Statutes of Arizona of 1901, entitled "Collection of Delinquent Taxes." The act evidently had for its purpose: First, the collection of all back taxes which had become delinquent for a period of five years next before its taking effect; second, the collection of delinquent taxes for each subsequent year. In other words, it provided for a back tax book for the five years next preceding the year 1903, in which was to be entered:

"A correct list in numerical order of all tracts of land and town lots on which back taxes shall be due in such county, city or town setting forth opposite each tract of land or town lot the name of the owner, if known and if the owner thereof be not known, then to whom the same was last assessed, the description thereof, the year or years for which such tract of land or town lot is delinquent or forfeited and the amount of the original tax due each fund on said real estate (and the interest due on the whole of said tax, at the time of making said 'back tax book' together with the clerk's fees then due), in appropriate columns arranged therefor and the aggregate amount of taxes, interests and clerk fees charged against each tract of land or town lot for all the years for which the same is delinquent or forfeited. . . . " Section 84.

All back taxes of whatever kind—and this included all back taxes "except taxes due prior to the year 1888"—were to be extended in the "back tax book" provided for by the act, and collected by the tax collector under its authority.

"Sec. 85. The tax collector of the respective counties shall proceed to collect the taxes contained in such 'back tax book' as herein required, and any person interested in, or the owner of any land or town lot contained in said 'back tax book' may,

on or before the 31st day of December, A. D. 1903, redeem such tract of land or town lot or any part thereof, from the territory's lien thereon, by paying. to the tax collector the amount of the original taxes, . . . as charged against such tract of lands or town lots described in said 'back tax book,' together with interest on the same from the 1st day of January, A. D. 1901, at the rate of ten per cent per annum, and the costs accruing under this chapter: Provided, that if suit shall have been commenced against any person owing taxes on any tract of land or town lot contained in said 'back tax book' for the collection of taxes due on the same, the person desiring to redeem any such tract of land or town lot shall in addition to the original tax and the interest, and costs accruing under this chapter, pay all necessary costs incurred in the court where the said suit is pending, together with such attorney's fees as the court may allow.''

If on the first day of January, 1904, any of said real estate on which back taxes were extended in the ''back tax book'' remained unredeemed, it was the duty of the tax collector to proceed to enforce the payment of the taxes charged against it by suit in the name of the state (territory) of Arizona, at the relation and to the use of the tax collector. If the contentions of appellant were placed in a case wherein he had purchased the property at a sale by the state for taxes delinquent prior to 1903, and the state had omitted to include in such sale the taxes delinquent for any one year thereof, and afterward the state had sought to make another sale of the property for the taxes for the omitted year, the question thus presented would be grounded on a much firmer basis than the present one. And argument of much force could be advanced in behalf of the proposition that the state, by thus selling the property, sold it freed from the taxes delinquent for previous years. But the act also provides for a ''back tax book'' for each year subsequent to the year 1903, and, if we should yield to the argument of appellant, the statute would be involved in a construction which would lead to a manifest absurdity, and such a construction we must seek to avoid. Of two constructions, either of which is warranted by the words of a statute, that is to be preferred which best harmonizes with the general tenor and spirit of the act. Lewis' Sutherland on Statutory Construction, sec. 489.

"When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity." *People* v. *Chicago*, 152 Ill. 546, 552, 38 N. E. 744.

The procedure for the collection of delinquent taxes for the five years preceding the year 1903, and for each year thereafter, is very similar, but the marked difference is found in what is extended in the "back tax book," and the duty of the tax collector in the collection of such taxes. The tax collector is required to collect all delinquent taxes extended in the back tax book for the years previous to the year 1903 in one action. But there is also a back tax book for each year thereafter. It is true that the lien for taxes attaches to the property on the first Monday in February of the year for which the taxes are levied, but such taxes are not payable until some time in the month of October succeeding, and do not become delinquent until some time in December following. Under the procedure formulated for making the annual "back tax book," and enforcing the collection of the delinquent taxes entered therein, by suit to foreclose the state's lien and making a sale of the property by virtue of the judgment obtained, the acts commanded by the statute to be done cannot be accomplished before the lien of taxes for a subsequent year has attached. For instance, the taxes levied for the year 1911 become a lien on the property on the first Monday in February, 1911, but the collection thereof is not enforceable until delinquency is entered in the "back tax book" for that year, and then only by a judgment of foreclosure obtained and a sale thereunder, which steps cannot be accomplished with whatever expedition possible until the lien for taxes of 1912 has attached. If, as contended by appellant, it was the duty of the collector to marshal the taxes for the years 1911 and 1912, in a single sale, it would be equally his duty to marshal the taxes for the year 1913 in the sale for the taxes of 1912, because such sale could not take place until some time in the year 1913 and after the lien for taxes for the year 1913 had attached. This would be

true of the taxes for all succeeding years. In such a process the state would be running in a circle and the only result accomplished would be a "marshaling" of the taxes, and not the collection thereof. Such a thing is not contemplated by the law, and we are disinclined to lend our aid in the making of such a dilemma.

We think it clear that a title acquired under a tax sale for the taxes of 1912 must prevail over a title founded in a sale for the taxes of the year 1911. The following authorities may be consulted: *Anderson* v. *Rider,* 46 Cal. 134; *Wall* v. *District of Columbia,* 6 Mackey (D. C.), 194 ; *McAlister* v. *Anderson,* 27 La. Ann. 425; *Excelsior Springs* v. *Henry,* 99 Mo. App. 450, 73 S. W. 944; *Keen* v. *Sheehan,* 154 Mass. 208, 28 N. E. 150.

The appellant places strong reliance upon the authority of *Brewer* v. *District of Columbia,* 5 Mackey (D. C.), 274. A reading of this case might to some lend a color contrary to the view we take and the authority cited. But in a later case that court very clearly distinguished the *Brewer Case.* It says:

"With regard to the three lots described in the sixth paragraph of the bill, it is quite clear to the court upon the authority of the case of *Brewer* v. *District of Columbia,* 5 Mackey [D. C.], 274, which case received a very careful examination by the judges who decided it, that by the legal operation of the tax sale to Harvey Spaulding in September, 1875, the District of Columbia forever lost all right against the purchaser at that sale, and those claiming title under him, to demand any taxes then in arrear and which might have been included in the delinquencies for which such sale was made, but that that case did not decide, and was not intended to decide, anything with regard to taxes accruing upon property intermediate between the last default for which a tax sale could be had and the date of the deed given in completion of such a sale. And we are of opinion that when the deed was given it related back to the time of the sale only, and cannot be relied upon, by way of estoppel or otherwise, to extinguish the right of the District to enforce by appropriate proceedings the payment of taxes maturing due, and becoming enforceable subsequently to the date of a tax sale." *Wall* v. *District of Columbia,* 6 Mackey (D. C.), 194, 206.

The sale made to appellant was for the taxes, penalties and costs due on the property for the year 1911. The deed made to him in pursuance of such sale did not purport to release the lien of the state for the taxes of the subsequent year, 1912. Aside from this, when appellant purchased the property, he had actual knowledge that the sale was made subject to the lien for the taxes of 1912, and that a suit was then pending for a foreclosure of such lien. This was the testimony of Judge Hawkins, attorney for the tax collector. The attorney for appellant, who represented him at the sale and made the bid for him, was asked this question: ''Was there anything said about a lien for taxes for 1912, and what was said about it, if anything, as a legal lien against this purchase?''

Answer: ''Judge Hawkins made some statement about other dues, on some other account, and I answered that we were dealing with the subject matter in hand, and if there were any other claims or demands we would deal with them—we would cross that bridge when we had to, or something of that sort. This is the idea: As a matter of fact, I intended to do just what we have done in bringing this suit. I intended that, if Judge Hawkins had not rounded up all the claims against the property that were claimed under the statutes, he would sacrifice them by that sale, and I intended that he should. I did not propose—my thought was not to pay that tax if that bid passed at that sale.''

The law does not support appellant's contention, and there is no equity in his case.

Judgment and order affirmed.

ROSS, C. J., and CUNNINGHAM, J., concur.