281 P.2d 794

**Julius S. BELFER and Elizabeth Belfer, husband and wife, Appellants,**

**v.**

**P. M. LEWIS and City of Tucson, a municipal corporation, Appellees.**

**No. 5905.**

Supreme Court of Arizona.

March 29, 1955.

Darrel G. Brown, Tucson, for appellants.

Harry L. Buchanan, City Atty., F. Dale Healy, Jr., Asst. City Atty., William J. Riegger, Asst. City Atty., Tucson, for appellee, City of Tucson.

PHELPS, Justice.

Appellants, plaintiffs below, filed an action against several defendants, among them appellee City of Tucson, seeking to quiet appellants' title to certain lots in the City of Tucson. Appellees moved for summary judgment and it was granted. From said judgment the appellants appeal.

The material facts are these: The property involved herein consists of two lots in Monterey Addition, an addition to the City of Tucson, Arizona. The original owners of these two lots were Edward J. and Marion Olech, husband and wife,

against whom appellants obtained a default judgment. They have not appealed.

In accordance with chapter 16, article 23, A.C.A.1939, amended, the City of Tucson caused to be made certain improvements in the Monterey Addition to the City of Tucson. The first improvement was a sewer assessment levied upon the properties in question on November 5, 1951.

The sewer assessment became delinquent and the properties were sold July 9, 1952, to appellants who paid the entire assessment and obtained a certificate of sale. Appellants thereafter obtained a deed from the City of Tucson superintendent of streets, July 9, 1953.

The second assessment was for paving and was levied July 18, 1952, which was after appellants received their certificate of sale but was prior to appellants' deed.

The paving assessment interest became delinquent January 8, 1953, and P. M. Lewis paid same and received a certificate of sale.

P. M. Lewis failed to make payment of the second installment of interest due in July 1953 and the properties were sold to the City of Tucson July 20, 1953, which received another certificate of sale. As above stated, appellants seek to quiet title to said property in themselves.

The principal question for determination on this appeal is whether one who obtains a certificate of sale, because of delinquent special assessments, that later

materializes into a deed acquires title free of improvement liens or assessments thereafter levied. In other words whether the senior special assessment certificate abolishes ab initio the junior special assessment certificate.

These improvements were authorized by statute, 16–2301, A.C.A.1939, and this statute contemplates more than one improvement. After the improvements are made and the property owner is delinquent, the property is then put up for public sale. If there are no purchasers for the property, then it must be struck off to the city under the provisions of section 16–2331, A.C.A. 1939.

Under our fact situation here is a case where two improvement assessments were made according to statutory provisions. After appellants had obtained a certificate of sale on a prior sewer assessment lien, as above stated a second assessment was made upon the same property for the pavement of streets. After the interest on the second assessment became delinquent the property was struck off to the appellee City of Tucson. Statute § 16–2331, supra, also provides for the municipality to sell any lots so purchased after the expiration of the time for redemption.

It is contended by appellants that where there are two special assessments under the Public Improvement By Special Assessment Act, the prior assessment is superior. They reach this conclusion from the following portion of section 16–2326, A.C.A.1939, which reads as follows:

"* * * It is hereby certified and declared * * * that the special assessments out of which said bonds are to be paid are first liens on the property assessed, subject only to the lien for general taxes and prior special assessments, * * *."

Section 16–2326, supra, provides the substantial form of the bonds to be issued under the Act and the portion thereof above quoted is a part of the bond itself. It has no application whatever to the issues here involved. It has to do only with the priority of liens as between bondholders under separate improvements provided for under the Act.

We are not in agreement with appellants' theory of the case. It is his contention that all a person would have to do to cut off the right of a holder of a certificate of sale for subsequent improvements and cause him to forfeit the amount paid therefor is to obtain a deed under an earlier assessment. The statute is not susceptible of such construction. Such an interpretation of the Act would not only discourage anyone from investing his money in the purchase of property under a delinquent special assessment sale but it would absolutely defeat the sale of improvement bonds in the open market and prevent such improvements from being made.

It is true that the legislature intended the earlier assessment to be a superior lien as

between the bondholders but it was not intended that a deed given pursuant to the foreclosure of this lien would cut off all rights under subsequent improvement assessments.

In the case of City of Phoenix v. Hughes, 36 Ariz. 399, 286 P. 191, 192, which involves a situation very similar to the one here in question, the court said:

"* * * It is well settled that 'land may be included in several assessment districts and part of the land included in one district may be included in another, provided it receives benefits from them all.' 44 C.J. 563, § 2945. There is no suggestion that lots six and seven were not benefited by the improvement on Culver street."

In that case there were two separate pavement improvements embodying the same lots 6 and 7 in the City of Phoenix. In the instant case one improvement is for sewage purposes and the other is for pavement purposes but like the lots in the Hughes case, supra, the lots here were benefited by both improvements. The court in the Hughes case had this further to say:

"Both liens have the same origin, and are made a charge against the property because the property is benefited by both improvements. If the plaintiff succeeds in becoming the owner, or if the present owner remains such, the benefits by reason of the improvements of Culver street will accrue to him. The suit to quiet title is one of equitable cognizance (Hankins v. Helms, 12 Ariz. 104, 95 P. 1133; Id., 12 Ariz. 178, 100 P. 460), and when persons resort to it, their cause must present some equities. They must not only show that the interest they seek to cancel is adverse to theirs, but that it would be inequitable to let it stand. Measured by the rules or principles of equity, plaintiff is certainly lost. Instead of offering to do equity, he is seeking, through the aid of the courts, to get something for nothing. To accomplish this purpose, he invokes the equitable doctrine of estoppel. He says that because the city made the Fifth street improvement, and sold the property to him to satisfy the special assessment lien placed thereon, it was estopped, not to make the Culver street improvement, but to enforce the lien for said improvement. Under the facts disclosed by his pleadings, he is in no position to claim estoppel. When he bought the lien under which he makes his claim, he was aware of the improvement on Culver street and that the special assessment therefor had not been paid. He purchased his lien with full knowledge of all the facts."

In the instant case the pavement improvement accrues to the benefit of appel-

lants as it does to the owners of the other lots in that area. To say that because the appellants had purchased the property under a sale for delinquent assessments places him in a better position than the owner of a lot who had paid all of his assessments when due is nothing short of an absurdity. As was said in the Hughes case, a suit to quiet title is of equitable cognizance and in order to invoke equity one must do equity. Appellants in the instant case as was said, in the Hughes case, seek to get something for nothing. This they cannot do in a court of equity. The position of appellants is not only inequitable but it is unrealistic. The legislature did not intend to make the purchase of property under delinquent improvement assessments a money-making device but rather, to secure the purchase of bonds issued upon such improvements. We said in the case of Thomas v. State, 17 Ariz. 18, 147 P. 914, 915, that:

" 'When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the Legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity.' People [ex rel. Keeney] v. [City of] Chicago, 152 Ill. 546, 552, 38 N.E. 744."

We therefore hold that the public improvement by special assessment act contemplates that more than one assessment levied against the same property may exist at the same time and contemplates that each assessment shall be a lien until fully paid. The lien under which appellee City of Tucson claims has not been paid and therefore still remains in full force and effect. Appellants, having an interest in the property, have the means of fully protecting themselves.

It must have been intended that if the City was forced to buy property under subsequent assessment, it would acquire something of value to sell in order that it could recoup its expenditures at a later date.

In conclusion we hold that title acquired under an earlier assessment lien does not extinguish an assessment lien or liens which are subsequently levied against the same property nor does it render null and void a deed which may be ultimately issued under the subsequent assessment lien.

The judgment of the trial court is affirmed.

LA PRADE, C. J., and UDALL, WINDES and STRUCKMEYER, JJ., concur.