FRANK UPHOFF, Plaintiff in Error, *vs.* THE INDUSTRIAL
BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 2, 1916.*

1. STATUTES—*courts are not confined to literal meaning of the
words used.* In construing a statute the courts are not confined to
the literal meaning of the words used, and if the intention can be
collected from the statute, words may be modified or altered so as
to obviate any inconsistency with such intention.

2. SAME—*construction leading to absurd consequences should
be avoided.* Where great inconvenience or absurd consequences
will result from a particular construction of a statute such con-
struction should be avoided, unless the meaning of the legislature
is so plain that avoidance is impossible.

3. SAME—*attention should not be confined to particular section
of statute to be construed.* A statute is passed as a whole and not
in parts or sections, hence each part or section should be construed
in connection with every other part or section in order to ascer-
tain the real intention of the legislature.

4. WORKMEN'S COMPENSATION—*when farm laborers are not cov-
ered by Workmen's Compensation act.* Farm laborers engaged in
general farming are not covered by the Workmen's Compensation
act unless the farmer has elected to accept the act under the pro-
visions of section 1.

5. SAME—*what occupations are included in paragraph (b) of
section 3 of Workmen's Compensation act.* Paragraph (b) of sec-
tion 3 of the Workmen's Compensation act of 1913 was only in-
tended to include such occupation, enterprise or business of the
employer as may properly be considered extra-hazardous.

6. SAME—*what is meant by the word "enterprise."* The word
"enterprise," as used in paragraph (b) of section 3 of the Work-
men's Compensation act of 1913, must be regarded as meaning a
work of some importance that may properly be considered as ardu-
ous or hazardous, and cannot be said to embrace the building of
a broom-corn shed on a farm.

7. SAME—*what injury is not covered by Workmen's Compensa-
tion act of 1913.* Where a carpenter is employed by a farmer to
assist in building a broom-corn shed on the farm, an injury to the
carpenter due to a piece of steel flying from a hammer he was
using and which destroys the sight of one eye is not within the
Workmen's Compensation act of 1913, where the farmer had not
elected to accept the act.

8. SAME—*decision of the Industrial Board is not final if it was without jurisdiction.* The decision of the Industrial Board is binding upon questions of fact only when it is acting within its powers, and it is without jurisdiction to apply the Workmen's Compensation act to persons not subject to its provisions.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

EMERY ANDREWS, RAYMOND G. REAL, and JOHN H. MARSHALL, for plaintiff in error.

BRYAN H. TIVNEN, for defendant in error B. C. Bruner.

Mr. JUSTICE CARTER delivered the opinion of the court:

In August, 1913, the plaintiff in error, Frank Uphoff, employed the defendant in error B. C. Bruner to help build a broom-corn shed on Uphoff's farm near Mattoon, Illinois. While Bruner was working on this structure a piece of metal flew from the hammer he was using and struck his eye, destroying its sight. He filed a petition with the Industrial Board of Illinois asking that damages be awarded him for the loss of his eye under the Workmen's Compensation law of 1913. The arbitration committee appointed by the Industrial Board under that act awarded him $1442 for his injury, and this award was affirmed by the majority of the Industrial Board. Uphoff thereafter filed a petition in the superior court of Cook county for a writ of *certiorari.* Under that writ the proceedings of the Industrial Board were reviewed and an order entered sustaining said proceedings. This writ of error was then sued out.

Counsel for plaintiff in error contend that the Industrial Board was without jurisdiction as to an injury of the character of the one here in question. The evidence shows that Uphoff has been engaged in farming for the past eighteen years; that Bruner had worked as a carpenter for about thirty years; that the building that he was working on was

a broom-corn shed, 32 by 24 feet and 17½ feet high, requiring for its construction the services of four men for about ten days. Bruner had been employed by Uphoff for no certain time but apparently to continue the work until the building was constructed. The accident happened during the seventh day of his employment. He received thirty cents an hour for ten hours a day and was expected only to do carpenter work. He had never worked for Uphoff before.

Section 1 of the Workmen's Compensation act provides that any employer may elect to provide and pay compensation for accidental injuries sustained by employees arising in the course of employment and thereby relieve himself from all other liability. It is conceded here that plaintiff in error had given no notice to the Industrial Board of his acceptance of the provisions of said act. He therefore can not be held liable thereunder unless it can be shown that he is one of the class of employers who are held liable under the act even though they have not elected to come under it. While the entire act must be read in order to understand its intent and meaning, certain sections must be particularly considered and construed in order to reach a proper conclusion in this case. Paragraph (*b*) of section 3 of said act reads:

"(*b*) The provisions of paragraph (*a*) of this section shall only apply to an employer engaged in any of the following occupations, enterprises or businesses, namely:

"1. The building, maintaining, repairing or demolishing of any structure;

"2. Construction, excavating or electrical work;

"3. Carriage by land or water and loading and unloading in connection therewith;

"4. The operation of any warehouse or general or terminal storehouses;

"5. Mining, surface mining or quarrying;

"6. Any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities;

"7. In any enterprise wherein molten metal, or explosive or injurious gases or vapors or inflammable vapors or fluids, or corrosive acids are manufactured, used, generated, stored or conveyed in dangerous quantities;

"8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous."

Section 4 defines what shall be understood by the term "employer" in said act. There is nothing in said section which will throw especial light on the question herein involved. If that section were construed alone, Uphoff might be considered an employer coming within the provisions of said act. Section 5 provides that "the term 'employee' as used in the act shall be construed to mean: * * * Second—Every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual or who is not engaged in the usual course of the trade, business, profession or occupation of his employer."

The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not also within the intention. When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention. (*Hoyne* v. *Danisch*, 264

Ill. 467.) When great inconvenience or absurd conse-
quences will result from a particular construction that con-
struction should be avoided, unless the meaning of the legis-
lature be so plain and manifest that avoidance is impossible.
(*People* v. *Wren,* 4 Scam. 269.) The courts are bound to
presume that absurd consequences leading to great injustice
were not contemplated by the legislature, and a construc-
tion should be adopted that it may be reasonable to presume
was contemplated. (2 Lewis' Sutherland on Stat. Const.
sec. 489; *People* v. *City of Chicago,* 152 Ill. 546; *Canal
Comrs.* v. *Sanitary District,* 184 id. 597.) A statute is
passed as a whole and not in parts or sections, hence each
part or section should be construed in connection with every
other part or section. In order to get the real intention of
the legislature, attention must not be confined to the one
section to be construed. *Warner* v. *King,* 267 Ill. 82, and
cited cases.

Numerous authorities from other jurisdictions con-
struing workmen's compensation acts have been cited and
frequent references have been made to acts in other juris-
dictions. Both counsel have cited authorities which, it is
argued, support the conclusion contended for. The word-
ing of our statute is so different on the question here un-
der consideration that the other acts or decisions could have
very little weight as to the proper construction to be here
given and further reference to them is unnecessary.

Manifestly, from the reading of the above quoted sec-
tions of the act, some employers were not intended to be
included in the act unless they elected so to be. Clearly,
under the quoted sections, read in connection with the re-
mainder of the act, farm laborers engaged in general farm-
ing would not be covered by the act unless the farmer
elected to accept the act under the provisions of section 1.

It is contended by counsel for defendants in error that
plaintiff in error must be held to come under the provisions
of the act under subdivision 1 of paragraph (*b*) of sec-

tion 3, as the broom-corn shed would be included in the provisions of that section in the building "of any structure." This could only be true if it were held that in so building such broom-corn shed the farmer was engaged in an occupation, enterprise or business and was engaged in the usual course of his "trade, business, profession or occupation," and that the employment was not casual. It is also plain that the legislature only intended to include under paragraph (b) any such occupations, enterprises or businesses of the employer when they were properly considered to be "extra-hazardous." It is true that the clause in subdivision 8 of said paragraph (b) calling all of these trades, businesses, enterprises or occupations extra-hazardous was inserted for the purpose of making clear what was considered extra-hazardous, but it is also clear that the legislature did not intend to include work that everyone knows is not extra-hazardous or even hazardous.

It is not seriously contended by counsel that the mere building of this crib could be properly classed as the business or occupation of plaintiff in error, but it is earnestly urged that it could properly be considered under the term "enterprise." An enterprise is "an undertaking of hazard; an arduous attempt." (15 Cyc. 1053, and cited cases.) Lexicographers define an enterprise as "an undertaking; something projected and attempted; an attempt or project; particularly an undertaking of some importance or one requiring boldness, energy or perseverance; an arduous or hazardous attempt, as, a warlike enterprise." The building of this shed might be classed under the head of something projected or attempted, but hardly as an important undertaking requiring courage or energy or one that was arduous or hazardous. To say that the word "enterprise" covered the building of any structure, however small, would lead, in some instances, to absurd consequences. A chicken coop or dog kennel ten feet square and four or five feet high would be a "structure" in a technical sense of the term, but

it would hardly be contended that such a structure was within the meaning of this act, according to the intent of the legislature. "Carriage by land," under subdivision 3 of said paragraph (*b*), in the strict, literal meaning of the term might require that it include the hauling of grain by team and wagon from the farm to the elevator. Surely that was not within the legislative intention. The word "excavating," under subdivision 2 of said paragraph (*b*), might cover, technically, the digging of a post-hole on a farm, but it was certainly never so intended. It is plain from the use of the word "enterprise" in other subdivisions of said paragraph (*b*) that it was intended to mean a work of some importance that might properly be considered arduous or hazardous. The building of this sort of a structure was hardly more hazardous than the building of a dog kennel or chicken coop or the building of an ordinary board fence for the farm. From any fair construction of the act the legislature never intended to call working on every farm structure, no matter how small, as extra-hazardous.

In the oral argument of this case it was suggested that in 1915 the legislature amended the Workmen's Compensation act so as to make it absolutely clear that none of the employees of farmers should be included in the act unless the farmer so elected. Each counsel argued that the fact that the legislature so amended the original act tended to support the construction contended for by him as to the original act. We do not think any fair argument can be drawn from this amendment in support of either construction contended for, and nothing we have said here is intended to have any bearing on the construction that should be given to the act as thus amended.

Counsel for defendant in error Bruner contends that the decision of the Industrial Board under this statute is decisive of this question and cannot be inquired into by the courts. This contention cannot be supported. The decision of the Industrial Board is only binding when it is act-

ing within its powers. This court said in *Courter* v. *Simpson Construction Co.* 264 Ill. 488, that "the Industrial Board has no jurisdiction to apply the act to persons or corporations who are not subject to its provisions nor to an accident not within the provisions of the act," and that if it did so the remedy was in the courts. (See, also, to the same effect, *Borgnis* v. *Falk Co.* 147 Wis. 327.) In view of what we have already said, it is clear that the Industrial Board was without jurisdiction in this matter.

The judgment of the superior court is reversed and the cause remanded, with directions to set aside and hold for naught the finding of the Industrial Board.

*Reversed and remanded, with directions.*