## James F. Bishop, Administrator, Appellee, v. Bowman Dairy Company, Appellant.

## Gen. No. 21,016.

1. WORKMEN'S COMPENSATION ACT, § 2*—*when employees presumed to have elected to be bound by act.* All employers included in sec. 3 of the Workmen's Compensation Act of 1913, Hurd's Rev. St., ch. 48, are, by section 2, of such act, conclusively presumed to have elected to be bound by its terms, unless they have manifested a contrary intention in the manner therein provided.

2. WORKMEN'S COMPENSATION ACT, § 3*—*who is not engaged in carriage by land or water.* In sec. 3 of the Workmen's Compensation Act, Hurd's Rev. St., ch. 48, the words "carriage by land or water" relate to those engaged in carriage as an "occupation, enterprise or business," and not to those engaged in a business where carriage is an incident, and a milk company is not within such terms so as to be liable for injuries to the driver of one of its wagons under such statute.

3. WORKMEN'S COMPENSATION ACT, § 3*—*who is not engaged in operating warehouses within act.* While defendant, a milk company, may have used and maintained "warehouses or general or terminal store houses" in connection with its business, *held* that it was not engaged in the business of operating them within the meaning of the statute.

4. WORKMEN'S COMPENSATION ACT, § 3*—*what enterprises not within scope of act.* Adopting the principle of statutory construction that a thing within the letter is not within the statute if not also within the intention, the Workmen's Compensation Law, sec. 3, clause 8, includes only enterprises of such extra-hazardous character that the Legislature or a municipality have felt called upon to make provisions for the guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or public therein, and municipal sanitary regulations applying to milk vendors or vehicle regulations, applying to all vehicles and operators alike, do not come within the meaning of such act.

Appeal from the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed and remanded. Opinion filed March 15, 1916.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Montgomery, Hart, Smith & Steere, for appellant.

William English, for appellee.

Mr. Justice Goodwin delivered the opinion of the court.

Bowman Dairy Company, appellant, hereinafter referred to as defendant, appeals from a judgment obtained by James F. Bishop, administrator of the estate of Frederick P. Noyes, appellee, hereinafter referred to as plaintiff, for $2,850, recovered on account of the death of the decedent, and based upon the contention that the business of the defendant fell within the terms of section 3 of the Workmen's Compensation Act of July 1, 1913, which went into effect eight days before the accident.    It was stipulated by the parties that if the defendant's business did come within the terms of section 3, the proper amount for which it was liable was $2,850.

Plaintiff's declaration, in substance, charged that defendant was possessed of a large number of buildings, outside of Chicago, known as bottling stations to which milk was delivered; that within these buildings the defendant had installed machinery and appliances used by numerous employees in separating and bottling milk and cream and canning and packing various other dairy products; that the stations were located close to railroad tracks on which were placed special cars, used exclusively in the transportation of defendant's milk and other dairy products, between the stations and defendant's switch tracks in Chicago, although these cars might be used by other dairy companies; that defendant loaded large quantities of these products on the cars, which were transported to its switch tracks in Chicago, where defendant unloaded them and distributed them by horses and wagons to consumers throughout the city; that at some of the switch tracks defendant maintained buildings used as offices and

places where excess and unsold milk and other products were deposited and kept until disposed of. It further recites that there were municipal ordinances in Chicago, regulating vendors of milk and cream, providing license fees, requiring the name to be stamped on the cap of the bottle, and containing certain health regulations providing for the disposal of unfit products. It also recites the general vehicle regulations applicable to horse-drawn vehicles, and requiring horses to be hitched when left standing in any street; that the duties of the plaintiff's intestate, who was a driver in the employ of the defendant, were to unload milk and other dairy products from the cars upon the wagons, and deliver them to consumers and to return the undelivered products to defendant's buildings; that while he was driving a wagon belonging to the defendant, carrying milk and other products for delivery, the horse attached to his wagon became unmanageable and ran away, "and the plaintiff was then and there thrown to and upon the ground and was thereby then and there killed." It avers the sending of the notice required by the statute, the granting of letters of administration, a statement of the amount of his wages, and avers that by force of the statutes defendant became liable to the beneficiaries thereunder in the sum of $3,500, payable in weekly instalments, and that defendant has refused to pay them. Plaintiff further averred that plaintiff and defendant had agreed that if defendant is liable in this cause as an employer under the statute in such case made and provided, being the act of the Legislature of Illinois, approved June 28, 1913, entitled "An Act to promote the general welfare," etc., then the sum of $2,850 was the full value of the right of plaintiff to compensation for the death of said Frederick P. Noyes, deceased. Defendant elected to stand by its general demurrer, which had been overruled.

The sole question in the case is as to whether the defendant company, which it was agreed had not affirmatively elected to be bound by the terms of the Workmen's Compensation Act of 1913, came within the terms of the third section thereof. It may be said that all employers included in that section are, by the second section, conclusively presumed to have elected to be bound by the terms of the act, unless they have manifested a contrary intention in the manner therein provided.

The third section of the act, which appears as paragraph 128 of chapter 48, Hurd's Revised Statutes of Illinois (1913) is as follows:

"3 (a) In any action to recover damages against an employer, engaged in any of the occupations, enterprises or businesses enumerated in paragraph (b) of this section, who shall elect not to provide and pay compensation to any employe, according to the provisions of this act, it shall not be a defense, that: First, the employe assumed the risks of the employment; second, the injury or death was caused in whole or in part by the negligence of a fellow-servant; or third, the injury or death was proximately caused by the contributory negligence of the employe.

"(b) The provisions of paragraph (a) of this section shall only apply to an employer engaged in any of the following occupations, enterprises or businesses, namely:

"1. The building, maintaining, repairing or demolishing of any structure;

"2. Construction, excavating or electrical work;

"3. Carriage by land or water and loading and unloading in connection therewith;

"4. The operation of any warehouse or general or terminal store houses;

"5. Mining, surface mining or quarrying;

"6. Any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities;

"7. In any enterprise wherein molten metal, or explosive or injurious gases or vapors or inflammable

vapors or fluids, or corrosive acids are manufactured, used, generated, stored or conveyed in dangerous quantities;

"8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employes or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extra-hazardous."

It is claimed that the business of the defendant, as described in the declaration, comes within the terms of clauses 3, 4, and 8. It seems very clear to us that the defendant was not, within the meaning of the statute, engaged in the "occupation, enterprise, or business" of "carriage by land or water," etc. In one very broad sense, practically every manufacturer, business house, farmer and truck grower, as well as those engaged in almost innumerable other occupations, as an incident to his business, carries by land or water, and loads and unloads in connection therewith, but very clearly, "carriage by land or water" relates to those engaged in carriage as an "occupation, enterprise or business," and not to those engaged in an occupation, enterprise or business to which carriage is an incident. (See *Uphoff v. Industrial Board of Illinois*, 271 Ill. 312.) What is said in regard to clause 3 applies with equal force to clause 4, for while the defendant may have used and maintained "warehouses or general or terminal store houses" in connection with its business, it certainly was not engaged in the business of operating them within the meaning of the statute.

Plaintiff claims also that defendant comes within clause 8, which covers any enterprise "in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safe-guarding of the employees or the public therein; each of which occupations, en-

terprises or businesses are hereby declared to be extra-hazardous.''

In passing upon this section of the act, the Supreme Court said, in *Uphoff v. Industrial Board of Illinois, supra,* at page 315:

''The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not also within the intention. When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention.''

Later, on page 317, the court continued:

''It is also plain that the Legislature only intended to include under paragraph (b) any such occupations, enterprises or businesses of the employer when they were properly considered to be 'extra-hazardous.' It is true that the clause in subdivision 8 of said paragraph (b) calling all of these trades, businesses, enterprises or occupations extra-hazardous was inserted for the purpose of making clear what was considered extra-hazardous, but it is also clear that the Legislature did not intend to include work that everyone knows is not extra-hazardous or even hazardous.''

Having in view the principle thus laid down by the Supreme Court, what is the meaning that must be given to clause 8? It is clear that even giving the words their broadest construction, it only includes those enterprises which were of such a character that the Legislature or a municipality had felt called upon to make provisions for the regulating, guarding, use or on placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein. As the purpose of the act itself was to provide compensation for personal injuries, the words

"regulations for the protection and safeguarding of the employees or the public" as therein used càn only mean protecting and safeguarding them from personal injury. It, therefore, clearly appears that the sanitary municipal regulations referred to in the declaration are in no way connected with the purpose of the act, and consequently cannot be held to bring within its scope enterprises that would otherwise not be included. The only other provisions of the municipal ordinances referred to, apply to all vehicles and operators of vehicles, whether used in any enterprise or not, and so cannot have the effect of bringing those who use vehicles within the terms of this 8th clause, intended to be descriptive of extra-hazardous occupations, enterprises or businesses.

We do not wish to be understood as attempting to lay down a hard and fast rule as to what this 8th clause of section 3 includes; we are of the opinion however that it does not include the operation, enterprise or business in which the defendant was engaged. The judgment of the lower court must, therefore, be reversed and the cause remanded.

*Reversed and remanded.*