CARRIE L. MUNN *et al.* Plaintiffs in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS, Defendant in Error.

*Opinion filed June 22, 1916.*

1. WORKMEN'S COMPENSATION—*decision of the Industrial Board can be reviewed for errors of law only.* On writ of *certiorari* from the circuit court, or on further writ of error from the Supreme Court, the decision of the Industrial Board can be reviewed for errors of law only; and on writ of error from the Supreme Court, where there is nothing in the record but the findings and decision of the Industrial Board, the only question for the Supreme Court to determine is whether, from the facts recited in the decision of the board, that body acted within its powers in making the award.

2. SAME—*what sustains decision that injury arose out of and was received in course of employment.* A decision by the Industrial Board that the injury causing the death of an employee arose out of and was received in the course of his employment is sustained by its finding of facts that the employee died at his home from the effect of inhaling poisonous fumes on the preceding day while attempting to extinguish a fire in the boiler room of the building in which he was employed as janitor, even though the fire occurred after the hour when he was entitled to quit work according to the terms of his employment.

3. SAME—*when decision of Industrial Board is binding.* In the absence of fraud, both the circuit court and the Supreme Court are bound by the decision of the Industrial Board if there is any legal evidence to support it.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (WALTER BACHRACH, of counsel,) for plaintiffs in error.

HUTTMANN, CLOYES, NETHERTON & CARR, (CLAUDE
O. NETHERTON, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

Carrie L. Munn was the owner of a building located
at 172 West Washington street, in the city of Chicago.
F. S. Oliver and Andrew Kuby, doing business under the
firm name of Oliver & Co., were employed by her, as her
agents, to take charge of the rent, management and up-keep
of the building.   There was an elevator in the building
operated for the accommodation of tenants.   Conrad Cas-
parson was employed to operate the elevator, fire the boilers
in the building and keep the hall and stairways in the build-
ing swept clean.   The hours of his employment were from
seven in the morning to six in the evening.   On November
10, 1914, about seven o'clock in the evening, a fire occurred
in the basement of the building, where the boilers were lo-
cated and the coal stored for firing them.   Casparson had
not left the premises and he attempted to extinguish the
fire.   In doing so he was overcome by fumes or smoke, or
both, collapsed and was carried out of the building, where
in a short time he recovered sufficiently to re-enter the base-
ment and move or adjust some boxes therein, after which
he went to his home, where he died early the next morning
from the effects of inhaling poisonous gases in the boiler
room.   A committee of arbitration, selected under the pro-
visions of the Workmen's Compensation act, heard the
case and awarded the administratrix, Alma M. Casparson,
$3500, to be paid in installments of $36.84 per month, be-
ginning the tenth day of November, 1914.   On petition of
the owner of the building and her agents the award of
the committee of arbitration was reviewed by the Industrial
Board and it was there affirmed.   The case was then re-
moved, on the petition of Carrie L. Munn and Oliver & Co.,
to the circuit court of Cook county by writ of *certiorari.*
That court affirmed the decision and award of the Indus-

trial Board, and the case is brought to this court for review by writ of error.

It is the contention of plaintiffs in error that the fire occurred in the boiler room from film scraps of a highly inflammable character, which accumulated in the rooms of the Standard Film Exchange, one of the tenants in the building, and that said film scraps were placed at the door of the film company's rooms for removal by Casparson, who received fifty cents per week from the film company for that service. It is contended Casparson removed the film scraps in bags to the boiler room in the basement, and that after his hours of employment for the day had ended they in some way were ignited, and that in attempting to extinguish the fire thus caused, Casparson received the injury from which he died. On these grounds it is insisted the accident did not arise out of and in the course of Casparson's employment, and the Industrial Board was therefore without jurisdiction to make the award and the circuit court erred in confirming it.

Plaintiffs in error contend that upon the facts found by the Industrial Board the injury to the deceased did not arise out of and was not received in the course of his employment. It is conceded this court is bound by the finding of facts made by the Industrial Board and can only review its decision for errors of law. Paragraph (*e*) of section 19 of the Workmen's Compensation act makes the application for adjustment of claim and other documents in the nature of pleadings filed by either party, together with the decisions of the arbitrators and of the Industrial Board and the agreed statement of facts or stenographic report provided for in paragraphs (*b*) and (*c*,) "the record of the proceedings of said board, and shall be subject to review as thereinafter provided." Paragraph (*f*) makes the decision of the board, "acting within its powers," conclusive in the absence of fraud, unless reviewed as provided in the act. One method of review provided, and the one here

followed, is suing out of the circuit court a writ of *certiorari* to the Industrial Board. The circuit court in that proceeding has power to review only questions of law presented by the record. The judgments and orders of the circuit court in such cases may be reviewed by the Supreme Court by writ of error if the judge of the circuit court shall make a certificate stating the case is a proper one to be reviewed, or in case the circuit court certifies the case is not a proper one to be reviewed, the Supreme Court may, in its discretion, order a writ of error to issue. No agreed statement of facts or stenographic report is contained in the abstract but the findings and decision of the Industrial Board are. Our powers of review are limited to a determination, from the facts recited in the decision of the Industrial Board, whether that body acted within its powers in making the award. If the injury which caused the employee's death arose out of and was received in the course of his employment then the board acted within its powers, and as no fraud is alleged, its decision was conclusive upon the circuit court and this court. The Industrial Board decided the injury arose out of and was received in the course of deceased's employment, and recited the facts upon which it based its conclusion, as follows:

"The facts are substantially as follows: The respondent Carrie L. Munn was the owner of a building located at 172 West Washington street, in the city of Chicago. She employed Oliver & Co. as her agents, who had charge of the renting and up-keep of the building. The building was one in which an elevator was kept for the accommodation of the tenants. It was the duty of the deceased to operate the elevator, fire the boilers that were in operation in the building and keep the hall and stairways swept and clean. His work was to begin at seven o'clock in the morning and ended in the afternoon at six o'clock. One of the tenants in the building in which the deceased was employed was the Standard Film Exchange, who in the conduct of its busi-

ness accumulated large amounts of what is known as 'film
scraps.' These film scraps were put in bags by the film
company and set outside of the door and the deceased was
in the habit of taking them away. Just where he took them
and what he did with them, so far as the film company is
concerned, is not disclosed, although he probably shipped
them out of the city. The place for putting the coal in-
to the coal bins for the boilers was on the outside of the
building, and was covered with a tight-fitting cover that
would not admit the free passage of any substance ex-
cept when uncovered. Film scraps in some quantity were
thrown out on the street or from some cause accumulated
occasionally or at times around the place where the coal was
brought into the building. On or about seven o'clock in the
evening the tenth of November, 1914, Casparson was seen
in the basement of the building attempting to extinguish a
fire in the coal in and about the boiler and engine room. In
this attempt he became suffocated by the fumes or smoke
from a fire in the boiler room, collapsed and fell on the
floor. He was carried out and in a short time was restored
and went back into the boiler room and adjusted and moved
some boxes in which there were possibly some film scraps.
Bags of film scraps were found at various places in and
about the basement of the building the next day after the
fire, some of which, from appearances in the room, may
have been taken from the boiler room after the fire. The
deceased said to some witnesses who testified in the case,
in substance, that someone had set fire to the film scraps
and that he must get what remained out of the rooms or
he would possibly lose his job. The deceased returned to
his home and died early the next morning from the inhaling
of poisonous gases or from suffocation, the result of the
fire in the boiler room. The deceased, Casparson, was paid
by the Standard Film Exchange fifty cents a week for tak-
ing the film scraps away. He was quite frequently, es-
pecially on Tuesday evenings, in the building after his usual

hours of employment. On the occasion he was injured, after the injury he returned to the boiler room and put coal into the boiler. Film scraps are of a very inflammable character."

We do not understand the recital of the facts to sustain the claim that they are conclusive the fire was caused by film scraps clandestinely brought upon the employer's premises by Casparson in furtherance of his own personal and private interests and that it would not otherwise have occurred. It is recited in the Industrial Board's decision that Casparson was in the habit of removing bags of film scraps set outside the door of the film company's rooms, for which service he was paid fifty cents per week by the film company. Where he took them or what he did with them is not shown. The board found that when Casparson entered the boiler room the second time he adjusted and moved some boxes, "in which there were possibly some film scraps." The board further found film scraps in some quantity were thrown or accumulated on the street around the covered opening through which coal was brought into the building. There is no finding that the fire occurred from film scraps. The nearest approach to it is the recital that deceased said, in substance, to some witnesses who testified, that someone had set fire to the film scraps and he must get away what remained or he would possibly lose his job. The board found that bags of film scraps were found in various places in the basement next day after the fire, but it does not find there was any indication they had been on fire. The recital of facts states that about seven o'clock in the evening Casparson was seen in the basement "attempting to extinguish a fire in the coal" in the engine and boiler room, and all he did after he entered the boiler room the second time was to adjust and move some boxes, "in which there were possibly some film scraps," but nowhere is there any finding that the fire originated in or was caused by film scraps, much less in film scraps brought into the room by Caspar-

son in his own private interest. Nor does it appear from the recital of facts that Casparson's presence an hour after his day had ended under the terms of his employment was caused by his employment by the film company to remove its scraps. The mere fact that at the time of the accident Casparson's day's service, according to the terms of his employment, had ended, is not sufficient to authorize a reversal of the finding that the accident arose out of and was received in the course of his employment. The Industrial Board found that upon his return to the boiler room the second time he put in some coal. An employee should not be penalized for working overtime if he wishes to do so or for endeavoring to save his master's property. *Drago-vich* v. *Iroquois Iron Co.* 269 Ill. 478; Ruegg on Employers' Liability and Workmen's Compensation, (8th ed.) 346.

The circuit court and this court are bound by the decision of the Industrial Board if there is any legal evidence to support it. (*Sexton* v. *Newark District Telegraph Co.* [N. J.] 3 N. C. C. A. 569; *Bayne* v. *Riverside Storage and Cartage Co.* [Mich.] 5 id. 837.) It is not claimed this court can weigh and determine the preponderance of the evidence, but the claim, in substance, is, that the facts recited show, without contradiction, that the accident did not arise out of and in the course of the employment. Without further adverting to the facts recited by the board upon which it based its decision, we do not think the conclusion contended for by plaintiffs in error is warranted.

At the request of plaintiffs in error the Industrial Board made seven special findings of fact, but none of them are inconsistent with its decision.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*