<hr/>

# Margaret M. Delscamp, Appellee, v. Hahnemann Hospital of the City of Chicago, Appellant.

## Gen. No. 21,995.

1. STATUTES, § 43*—*what is necessary as to classification of enterprises.* When the Legislature attempts to subject enterprises to a new sort of liability not known to the common law, and without any affirmative election on the part of the proprietors of such enterprises, the classification should be so clear that all such proprietors will know at once whether they were or were not included.

2. WORKMEN'S COMPENSATION ACT, § 1*—*how construed.* Legislation, like the Workmen's Compensation Act, designed to promote the general welfare of the State, should not be so construed, on the one hand, as to defeat its object and on the other, as to make it a net for the unwary.

3. WORKMEN'S COMPENSATION ACT, § 1*—*when business is not extrahazardous.* Where defendant's business was that of maintaining a hospital in a structure containing elevators, high pressure

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

boilers, electric wiring and apparatus for generating and conducting electricity and stairways, subject, together with the building, to the regulatory ordinances of a large city, *held* that such business was not extrahazardous within the meaning of clause 8, paragraph (b) of section 3 of the Workmen's Compensation Act of 1913 [Cal. Ill. St. Supp. 1916, ¶ 5475(3)], declaring occupations, enterprises or businesses to be extrahazardous in which statutory or municipal ordinance regulations may be imposed for the regulating, guarding, use or placing of machinery or appliances, or for the protection or safeguarding of employees or the public therein.

O'CONNOR, P. J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. WILLIAM M. VANDEVENTER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed. Opinion filed May 9, 1917.

ASHCRAFT & ASHCRAFT, for appellant; CHARLES F. RATHBUN, of counsel.

M. D. DOLAN, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court quashing and dismissing a writ of certiorari to review a proceeding of the Industrial Board which awarded to appellee $3,500 on a claim brought under the Workmen's Compensation Act of 1913, on account of the death of her husband while in the employ of the appellant.

The record discloses that the deceased was employed by appellant as chief engineer of its hospital, and as such it was his duty to superintend the upkeep and repair of the machinery, heating, ventilation and lighting systems; that he met his death as the result of a fall while coming down the rear stairway from the third floor.

The appellee contends that as the structure used by

the appellant contained elevators, high-pressure boilers, electric wiring and apparatus for generating and conducting electricity, and stairways, subject to the regulatory ordinances of the City of Chicago, and as the building itself was subject to the same ordinances, the business or enterprise of appellant came within clause 8, paragraph "b" of section 3 of the Workmen's Compensation Act of 1913 [Cal. Ill. St. Supp. 1916, ¶ 5475(3)], and that, therefore, appellant was subject to the terms of the act, although it had not given notice of its election to be bound by it. The section in question is as follows:

"3. (a) In any action to recover damages against an employer, engaged in any of the occupations, enterprises or businesses enumerated in paragraph (b) of this section, who shall elect not to provide and pay compensation to any employee, according to the provisions of this act, it shall not be a defense, that: First, the employee assumed the risks of the employment; second, the injury or death was caused in whole or in part by the negligence of a fellow-servant; or third, the injury or death was proximately caused by the contributory negligence of the employee.

"(b) The provisions of paragraph (a) of this section shall only apply to an employer engaged in any of the following occupations, enterprises or businesses, namely:

"1. The building, maintaining, repairing or demolishing of any structure;

"2. Construction, excavating or electrical work;

"3. Carriage by land or water and loading or unloading in connection therewith;

"4. The operation of any warehouse or general or terminal store houses;

"5. Mining, surface mining or quarrying;

"6. Any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities;

"7. In any enterprise wherein molten metal, or explosive or injurious gases or vapors, or inflammable

vapors or fluids, or corrosive acids, are manufactured, used, generated, stored or conveyed in dangerous quantities;

"8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extrahazardous."

The question before the court in this case, therefore, is as to whether appellant was an employer engaged in any of the "occupations, enterprises or businesses" enumerated in paragraph (b) above quoted. Clearly appellant's sole business was that of maintaining a hospital; in no way can such an enterprise be said to be extrahazardous as that term has been construed in the case of *Uphoff v. Industrial Board of Illinois*, 271 Ill. 312 [13 N. C. C. A. 80], where the court said, at page 317:

"It is also plain that the Legislature only intended to include under paragraph (b) any such occupations, enterprises or businesses of the employer when they were properly considered to be 'extrahazardous.' It is true that the clause in subdivision 8 of said paragraph (b) calling all of these trades, businesses, enterprises or occupations extrahazardous was inserted for the purpose of making clear what was considered extrahazardous, but it is also clear that the Legislature did not intend to include work that everyone knows is not extrahazardous or even hazardous."

Nor does appellant seem to be engaged in an extrahazardous enterprise merely because it occupies a building suitably large for its needs, and equipped with the apparently usual and customary freight and passenger elevators, system of high-pressure boilers, wiring and electrical apparatus for generating and conducting electricity, and a steam-heating system, although these appliances are, like many others in com-

mon, every-day use, subject to municipal regulations. When the Legislature attempts to subject enterprises to a new sort of liability not known to the common law, and without any affirmative election on the part of the employer, it would seem that the classification should be so clear that all employers would know at once whether they were or were not included. It logically follows from this that if the act does not, by its terms, clearly include an enterprise, then the Legislature, according to the ordinary canons of construction, cannot be presumed to have intended that the enterprise should fall within its terms. Any other construction would lead to doubt and uncertainty. While legislation of this kind, designed to promote the general welfare of the State, ought not to be so construed as to defeat its object, yet, on the other hand, it should not be so construed as to make it a net for the unwary.

As we are, therefore, of the opinion that appellant's business was not extrahazardous within the meaning of the term as defined by our Supreme Court, and is not included within the language of section 3, the judgments of the Circuit Court and the Industrial Board are reversed.

*Reversed.*

MR. PRESIDING JUSTICE O'CONNOR dissenting:

This proceeding involves a claim for compensation for the death of appellee's husband under the Workmen's Compensation Act of 1913. The proceedings before the Industrial Board resulted in the allowance of compensation to appellee aggregating $3,500, payable in instalments. The evidence disclosed that appellant is a corporation organized not for pecuniary profit, and conducts and operates a hospital in Chicago. Appellee's husband, William H. Delscamp, was employed by appellant as chief engineer. His duties

were to superintend the operation and repair of the heating, lighting, ventilation and plumbing systems of the hospital. About four o'clock p. m., December 16, 1915, he was found lying in an injured and unconscious condition at the foot of the basement stairs in the rear of the hospital. Upon examination it was found that he sustained a fracture of the skull and other injuries, from which he died a few days later.

Appellant contends that it is not subject to the provisions of the Workmen's Compensation Act, in that the business or occupation which it conducted was not extrahazardous within the meaning of the act, and as it had not given the notice of its election to accept the terms of the act, as provided by section 1, paragraph (a), the Industrial Board was therefore without jurisdiction.

It is conceded that appellant did not give the notice of its election to accept the terms of the act, as provided. The question then is whether the hospital as conducted by appellant was an extrahazardous business as defined in the act. Section 3, paragraph (b) of the Act [Cal. Ill. St. Supp. 1916, ¶ 5475(3)] enumerates certain occupations, enterprises or businesses which are deemed extrahazardous. Paragraph (b), so far as material, is as follows:

"8. In any enterprise in which statutory or municipal ordinance regulations are now or shall hereafter be imposed for the regulating, guarding, use or the placing of machinery or appliances, or for the protection and safeguarding of the employees or the public therein; each of which occupations, enterprises or businesses are hereby declared to be extrahazardous."

In construing subdivision 8 of paragraph (b), the Supreme Court, in the case of *Uphoff v. Industrial Board of Illinois*, 271 Ill. 312 [13 N. C. C. A. 80], said p. 317:

"It is also plain that the Legislature only intended to include under paragraph (b) any such occupations,

enterprises or businesses of the employer when they were properly considered to be 'extrahazardous.' It is true that the clause in subdivision 8 of said paragraph (b) calling all of these trades, businesses, enterprises or occupations extrahazardous was inserted for the purpose of making clear what was considered extrahazardous, but it is also clear that the Legislature did not intend to include work that everyone knows is not extrahazardous or even hazardous.''

The evidence tends to show that appellant conducts a hospital in the City of Chicago in a seven-story building, which is equipped with freight and passenger elevators; a system of high-pressure boilers in the basement; a system of wiring and electrical apparatus, used for generating and conducting electricity, and a steam-heating system; all of which, as to installation and operation, are regulated and controlled by ordinances of the City of Chicago, ''for the protection and safeguarding of the employees or the public.'' The evidence further tends to show that it is the duty of the deceased to supervise the operation of all these appliances, and that in the performance of his duties he was required to use the freight and passenger elevators from time to time in going to and from the several floors of the hospital; that he had a desk in the basement near the boilers where he could be found when not called by his duties to some other portion of the building. His hours of work were from eight o'clock in the morning until six or seven o'clock in the evening. Sometimes he worked all night, and he was expected to call on Sundays at the hospital. He had worked at the hospital for more than seventeen years. The witness Burt, who was the general superintendent of the hospital for twenty years, testified that on an occasion when he saw the deceased under the influence of liquor, he told him he must stop drinking; that ''I would not feel the confidence to let him take charge of a high pressure plant because there

might be something happen to a lot of sick people; we could not take a chance."

Section 4 of the Act [Cal. Ill. St. Supp. 1916, ¶ 5475(4)] defines the term "employer" to be "every person, firm, public or private corporation, including hospitals, public service, eleemosynary, religious or charitable corporations or associations," who have come under the act by notice or otherwise. From this it appears that a hospital, if its business is extrahazardous within the meaning of section 3, paragraph (b) would under section 2 [Cal. Ill. St. Supp. 1916, ¶ 5475(2)], come within the act without notice. From a careful consideration of this paragraph, and the manner in which the hospital was constructed and operated, I am clearly of the opinion that appellant is subject to the provisions of the act, and that, if the deceased received accidental injuries "arising out of and in the course of the employment," then under the rule announced in the cases of *Suburban Ice Co. v. Industrial Board of Illinois,* 274 Ill. 630; *Vaughan's Seed Store v. Simonini,* 275 Ill. 477; *Marshall v. City of Pekin,* 276 Ill. 187, appellee was entitled to recover.

Appellant, however, contends that there was no evidence that the injuries received were accidental, or that they arose out of and in the course of his employment. In support of this contention it is argued that no one saw how the injuries were received, and that the evidence clearly shows that the deceased, at and prior to the time he was injured, was intoxicated, and was not in the discharge of his duties, but was injured as a result of such intoxication.

The evidence tends to show that the deceased had been in the employ of appellant for more than seventeen years; that his duties took him from time to time to all parts of the building; that his desk was in the boiler room in the basement; that the usual method of reaching his desk was by means of the stairway, at

the foot of which he was found unconscious; that it was necessary for him in the discharge of his duties to go up and down this stairway several times daily; that about fifteen minutes before he was found he went up the stairs from the boiler room to fix some radiators; that a little later he was seen going down the stairs in the direction of his desk; that the stairway was dark, and immediately thereafter he was found unconscious at the foot of the stairs. There was evidence, however, which tended to show that the deceased had been drinking during the day and was intoxicated; that he was so under the influence of liquor that he could scarcely navigate; that he was seen to stagger towards the stairway. On the other hand, there was evidence tending to show that he was not under the influence of liquor, although he had been drinking some during the day; that he had been on duty all day and was on duty at the time he received the injuries. I think there is evidence to sustain the finding of the Industrial Board that he received accidental injuries arising out of and in the course of his employment, and, in the absence of fraud, both the Circuit Court and this court are bound by such finding. *Munn v. Industrial Board of Illinois*, 274 Ill. 70 [12 N. C. C. A. 652].