(No. 2735—

PETER J. FRIEDERS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed December 15, 1937.*

PLAIN & PLAIN, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

No apparent dispute exists as to the facts herein. Claimant, Peter J. Frieders, had been hired by the Division of Highways of Illinois to cut grass and weeds along the S. B. I.

Highways in DuPage and Will Counties. He furnished his own team and mower, and went to such points as directed by his superiors in the Highway Department. On October 10, 1934 he had been cutting grass along State Route No. 59 just south of the Will County line. Along this particular road he had a stretch of nine miles on both sides of the highway, and had been mowing along this section for several days. He took the mower from his home and left it at the scene of his labors, but drove his team back and forth daily, using a spring wagon in which to ride to and from his work. On the date last above stated he had finished his work about 5 o'clock p. m., and as there would be no other work at this point during the remainder of the year, he tied his wagon behind the mower and started home by the best available route and over the usually traveled way. He proceeded along Route No. 59 for a certain distance, then along a two and one-half mile graveled road to Route No. 65, then over Route No. 65 until he was a short distance west of Frontenac. At that point a man named Bray, driving an automobile owned by one Curtis Middleton, ran into claimant from the rear, causing a wreck and a runaway and throwing claimant to the ground, resulting in a spiral fracture of the neck of the Femur of the left leg, with a displacement of certain boney structure. He was confined to the hospital for six weeks and was then removed to his home, where, after walking with the aid of crutches for about three months, he began the use of a cane. He was totally disabled until April 15, 1936. At the present time his left leg is about one and one-half ($1\frac{1}{2}$) inches shorter than the right leg, and he has suffered an apparent loss of power and function in the left leg of twenty-five (25) per cent.

At the time of the accident claimant was married and was the father of eight children then under sixteen (16) years of age. As a result of the injury he incurred a doctor's bill of One Hundred Three ($103.00) Dollars, due Dr. W. H. Schwingel, of Aurora, Illinois, and a hospital bill of One Hundred Twenty-nine and 90/100 ($129.90) Dollars, due St. Charles Hospital of Aurora, neither of which has apparently been paid. The record further discloses that claimant attempted to collect damages from Curtis Middleton, the owner of the automobile which struck him, but that said Curtis Middleton is insolvent; that the fixtures in the tavern operated by him are mortgaged and the automobile in question has a

lien against same; that the driver Milton Bray is financially irresponsible and was using the car for his own personal purposes at the time of such accident.

Claimant was receiving Fifty (50) Cents per hour for the work in which he was engaged, and during the year next preceding the accident had received Two Hundred Fifty-nine ($259.00) Dollars, being employed during the whole or part of sixteen (16) weeks, making an average weekly wage of Sixteen and 13/100 ($16.13) Dollars per week. The weekly minimum wage upon which an award would be computed is increased from Seven and 50/100 ($7.50) Dollars to Fourteen ($14.00) Dollars per week, under the provisions of Section 8 (j)2, by reason of four children then and there under the age of sixteen (16) years. Temporary total disability, if any is due, amounts to Three Hundred Seventy ($370.00) Dollars for the twenty-six and three-sevenths (26 3/7) weeks of total disability; permanent partial specific loss of twenty-five (25) per cent of the use of the leg, under the provisions of Sections 8 (e), 15 and 17 of the Act, being one-fourth (¼) of one hundred ninety (190) weeks, or Six Hundred Sixty-five ($665.00) Dollars.

Respondent contends that the accident did not arise out of and in the course of the employment, for the reason that claimant was not actually engaged in the operation of mowing at the time of the injury, and that the accident occurred while claimant was enroute to his home after completing the task in which he had been engaged.

The general rule stated in the *Shegart* case, i. e.:

"That an employment does not begin until the employee reaches where he is to work and does not continue after he has left the place of employment," (*Shegart* vs. *Ind. Com.*, 336 Ill. 223),

is modified by a number of other decisions. Incidentally, in the *Shegart* case the claimant had never yet entered the employ of the prospective employer.

In the *Vincennes Bridge* case cited by respondent, the court held:

"An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a

result of the exposure occasioned by the nature of the employment, then it arises out of the employment."

(<em>Vincennes Bridge Company</em> vs. <em>Ind. Com.</em> 351, Ill. 444.)

In the *Union Starch Company* case, also cited by respondent, the court held:

"That an accident to be compensable must result from a risk incident to the employment, and that the employee at the time of the accident must be doing that which he is reasonably required to do within the time of his employment and at a place where he reasonably may be expected to be while discharging the duties of his employment."

The court there further said,

"Whether the exact hour of seven o'clock (when employee's work began) had arrived or whether it was a few minutes either before or after seven is not material so long as a substantial and reasonable compliance with the employer's requirements is shown."

(<em>Union Starch Co.</em> vs. <em>Ind. Com.</em>, 344 Ill. 77.)

In another case a prospective employee of a railroad had received transportation on Friday, and on that day traveled on one of respondent's trains from Decatur, Illinois to a railroad siding near Monticello, where a bunk-car had been placed for the use of employees as living quarters. A few minutes after arrival this individual was struck by a train and killed. He had performed no duties and had no duties to perform until the next day, and he was not to begin work until the next day. The Court held that he was not in the employ of respondent at the time of the accident, and that his death did not arise out of and in the course of his employment.

(<em>B. D. & C. R. R. Co.</em> vs. <em>Ind. Board</em>, 276 Ill., 239.)

The facts recited in the foregoing case distinguish it from the case at bar.

In *Mueller Construction Company* vs. *Ind. Board*, 283 Ill. 148, the foreman of a construction crew, in order to properly perform his duties was in the custom of arriving at the building where the construction work was being done from twenty to thirty minutes before the other workmen, in order to look over the ground work, make preparation for the day's labor and to order materials. He was paid by the hour from 8 to 12 and from 1 to 5, and received no extra pay for reporting in advance of the other men. No telephone had been installed where the work was in progress, and during the three or four months they had been at work on the building in question he had used some telephone in the vicinity when the necessity of ordering material arose. On the day of the accident he arrived at the building about 7:30 a. m. He opened the doors in the basement where the tools were kept, and then started to go to a telephone in order to 'phone a Lumber Company for material necessary in the day's work. He went a block north and started to cross the street when he was struck by an automobile and severely injured. In denying liability the defendant contended: First, that the period of employment had not commenced at the time of the accident, and therefore such accident did not occur in the course of his employment; second, that the injury received in crossing a public street was not one arising out of his employment, but arose from a hazard common to all

people who use the public streets. In considering these contentions the Court said:

"The words 'arising out of' refer to the origin or cause of the accident and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident takes place * * * as a part of defendant's duties he was required to order materials as needed, and it may fairly be said, as an incident to such employment, that he would have occasion to use, and did use, a telephone. As none was provided, he would go to some nearby place as occasion required. In going to and returning from such place we think he was as much in the course of his employment as he would have been in going to and returning from a telephone if one had been installed on the premises * * * he was on his way to telephone about a matter which was a part of his employer's business in the usual course of his employment. Under these facts there can be no serious question but that the accident occurred in the course of the employment. That it occurred before the actual time for the commencement of work is not controlling. Too great stress cannot be placed on the exact time when the earning of wages commenced and ended, but a reasonable time must be allowed before and after such time and included within such period of employment where the employee is at a place where he might reasonably be expected to be at such time and is injured in the course of the duties of his employment. What would be a reasonable time in such case must to a large extent depend upon the particular facts and circumstances of each case."

In *Munn* vs. *Ind. Board*, 274 Ill. 70, the Court held:

"An injury sustained by an employee an hour after his usual quitting time, by inhaling gas while attempting to put out a fire in the coal in and about the boiler and engine room on the employer's premises, arose out of and occurred in the course of his employment."

We believe the *Mueller* case is applicable to the present case upon the question of the time of the accident. In the former case the employee was injured about thirty minutes before his work for the day was to begin, and in the present case claimant was injured about forty minutes after his actual mowing operations on the highway ceased. During those forty minutes claimant had been continuously engaged in removing from the scene of his actual labors the mowing machine and team necessarily used by him in such work. Whether the accident arose out of the employment or from any special risk or hazard peculiar to it or incidentally connected therewith, is a further question. Again quoting the *Mueller* case (supra p. 155) we read, that " a risk is said to be incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." It is difficult to reconcile the decisions in cases where employees have been injured while in public

places but the gist of the decisions seem to be that there must be some special risk incident to the particular employment which imposes a greater danger upon the employee than upon other persons using the streets. The test however seems not to be that other persons are exposed to the same danger, but rather that the employment renders the workman peculiarly subject to the danger, that is did the circumstances of the employment require the employee to incur some special risk in using the highway? It was necessary in order to mow the grass and weeds along Highway No. 52 that the team and mover be brought to that location, and that they be removed after such work was finished. The removal of same was a natural incident of the work, and the injury suffered by claimant by being run into on the highway while so removing his machinery and team resulted from a risk incident to the employment, and the employee at the time of the accident was doing that which he was reasonably required to do within the time of his employment and at a place where he reasonably might be expected to be while discharging the duties of his employment, and the facts herein apparently come within the rule of the *Union Starch Company* case (supra) as hereinabove stated. It was a part of claimant's duties to drive the mower to the point where the grass and weeds required cutting, and to remove it from the scene of such operations when the work was finished. Again considering the rule as stated in the *Vincennes Bridge Company* case (supra,) we believe that "upon consideration of all the circumstances a causal connection is apparent between the conditions under which claimant's work was required to be performed and the resulting injury; that the injury can be seen to have followed as a natural incident of the work and could have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment," i. e., the moving of machinery and equipment over the highways to and from the place of work. We therefore find that the injuries to claimant arose not only in the course of, "but out of his employment," and that he is entitled to compensation under the terms of the Workmen's Compensation Act. An award is therefore hereby made in favor of claimant Peter J. Frieders, for temporary total disability for twenty-six and three-sevenths (26 3/7) weeks from October 10, 1934 to April 15, 1935, in the sum of Three Hundred Seventy ($370.00)

Dollars, and for twenty-five (25) per cent permanent partial specific loss of use of the left leg, in the sum of Six Hundred Sixty-five ($665.00) Dollars, making total compensation of One Thousand Thirty-five ($1,035.00) Dollars, and the further sum of One Hundred Three ($103.00) Dollars payable to claimant for the use of Dr. W. H. Schwingel, and the further sum of One Hundred Twenty-nine and 90/100 ($129.90) Dollars to claimant for the use of St. Charles Hospital, making a total award of One Thousand Two Hundred Sixty-seven and 90/100 ($1,267.90) Dollars.

On the basis of Fourteen ($14.00) Dollars per week minimum payments, the total amount of such award has heretofore been earned, and claimant is therefore entitled to payment thereof in full at this time.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," Approved July 3, 1937 (Sess. Laws 1937, p. 83), and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.